THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MELVIN E. LEVINSON, Defendant-Appellant.
First District (1st Division)    No. 76-722

Opinion filed August 13, 1979.—Rehearing denied September 24, 1979.

James J. Doherty, Public Defender, of Chicago (Mary Therese Woodward and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

At the conclusion of a bench trial the defendant, Melvin E. Levinson, was found guilty of criminal contempt and was sentenced to five years imprisonment.

On appeal the defendant presents the following issues for review: (1) whether the statute of limitations bars the prosecution of the defendant for criminal contempt; (2) whether documentary evidence was properly admitted at the trial where such evidence was first obtained by a grand jury; (3) whether the defendant was properly precluded from testifying as to prior conversations with his co-defendant father; and (4) whether the sentence was illegal and excessive. We affirm.

Both parties have stipulated as to the contents of the record on appeal and no issue has been raised as to the sufficiency of the proof or any question relating to proof of guilt beyond a reasonable doubt.

Leo Ziv (decedent), an Illinois resident, died intestate on September 4, 1965, leaving a substantial estate consisting mainly of stocks and cash deposited in large part with various banks in safety deposit boxes and savings accounts. The only surviving heirs were the decedent's three sisters, Sylvia Kessler, Flo Ziv and Bertha Pinsky, and his brother, Sol Ziv, all of whom resided in California. On September 9, 1965, I. Harvey Levinson, an attorney with offices in Chicago, was appointed administrator of the decedent's estate by the circuit court of Cook County, Probate Division, at the request of the aforementioned heirs. Shortly thereafter attorney Melvin E. Levinson, the son of I. Harvey Levinson and the defendant herein, was retained by his father as attorney for the estate. The administrator and the defendant shared the same suite of offices during the initial phases of the administration of the estate.

In view of the absence of any issue raised on appeal as to the sufficiency of the evidence, it is unnecessary to set forth all of the facts in detail surrounding the handling of the estate by the administrator and the attorney for the estate. It is sufficient for our purposes to briefly set forth

the allegations contained in the amended petition for a rule to show cause for criminal contempt and as established by the proof in this cause. The petition alleges generally and the proof establishes that the defendant, *inter alia*, committed the following acts:

(1) The defendant and the administrator of the estate sold the decedent's substantial stock holdings without leave of court and then deposited the proceeds in various bank accounts in the name of the estate and proceeded to withdraw the same or similar amounts on the same day or within a few days of the initial deposit without leave of court.

(2) The defendant endorsed some of these deposited checks, signed the signature cards on file at the banks, as well as other documents, in the name of the administrator.

(3) The defendant filed or participated in the filing of various inventories with the probate court containing false reports as to the assets in the decedent's estate. For example, an amended inventory prepared by the defendant was filed on July 29, 1966. The defendant failed to list $57,885 discovered by the administrator in a safety deposit box at First Federal Savings and Loan which was owned jointly by the decedent and his brother, Sol Ziv. The $57,885 was listed in subsequent inventories only after its omission was discovered by other parties.

(4) On or about September 13, 1967, the defendant received a check drawn on the Exchange National Bank for $6,000 from Diamond Jim's Inc. which was made payable to the administrator. Of the said $6,000, $5,000 was for the settlement of a debt due the decedent and $1,000 represented the proceeds from the sale of 12½ shares of Diamond Jim stock. No portion of said $6,000 was listed as having been received by the estate in any accounting filed by the defendant or the administrator. Nor was any portion of said $6,000 distributed to the heirs.

(5) The defendant knew of certain dividends received by the administrator which should have been included as assets of the estate. The administrator failed to report, account for, or distribute $14,254.94 in said dividends.

(6) The defendant filed or participated in the filing of accounts on February 16, 1968, June 26, 1968, November 21, 1969 and again on January 6, 1970, which had attached to them vouchers indicating that the accountant for the estate had signed for and had been paid $2,500 when in fact the accountant had received approximately $1,000 and had not yet signed the attached vouchers.

(7) The defendant signed the name of the administrator on the account filed November 21, 1969. This account indicated that $28,475.14 in Federal estate taxes had been paid when, in fact, they had not been paid. Also the defendant knowingly participated in the preparation and filing of a final account entitled "Returns and Disbursements" on January

6, 1970. This final account indicated again that said taxes had been paid when in fact they had not been paid and further indicated that a receipt had been obtained from the Federal government for said payment when no such receipt had been issued or received.

(8) The final account also indicated that $12,000 had been distributed to the heirs when in fact no such distribution had taken place. No receipts were attached to this account indicating that the heirs had received all or any part of this sum.

(9) In addition, the final account indicated that the heirs had received certain shares of the decedent's stock when in fact no such distribution of said shares was made and no vouchers reflecting such distribution was attached to the final account.

(10) The defendant failed to advise the court of misstatements in the final account in the period subsequent to the filing of the final account.

(11) The defendant and the administrator prolonged the administration of the estate, necessitating the hiring of a California attorney by the heirs to investigate the handling of the estate.

(12) The defendant and the administrator deliberately misrepresented the status of the estate and failed to cooperate with the California attorney, necessitating the additional hiring of an Illinois attorney to examine the handling of the estate.

(13) The defendant failed to cooperate with respect to turning over certain documents of the estate to the California or Illinois attorney, or to the other interested parties involved in the administration of the estate.

(14) The defendant and the administrator wilfully and wrongfully converted to their own use $136,252.98 or more from the estate, and refused to restore said funds or properly distribute the same in breach of their fiduciary duty to the estate.

These are some of the acts alleged in the amended petition for a rule to show cause and as established by the proof in this cause. There is ample evidence to demonstrate other improprieties on the part of the defendant, and no question is presented on appeal as to the sufficiency of the evidence of guilt beyond a reasonable doubt.

Although the record is unclear as to when the defendant withdrew as the estate's attorney, the defendant testified at the trial that he had nothing further to do with the estate after the filing of the November 25, 1969, final account. The record reveals that on November 26, 1969, Ira Schultz was granted leave to file his appearance as the attorney for the estate by court order.

On September 2, 1971, I. Harvey Levinson was removed as administrator and Gregory Gelderman, a Chicago attorney, who had been appointed previously amicus curiae to investigate the estate was appointed administrator de bonis non on October 26, 1971. Gelderman

immediately began making collections from the surety of the estate to recover the assets of the estate. He also began making distributions of the estate's assets to the heirs. The recovery and collection process ran from February 22, 1972, through March 8, 1974, by Gelderman and he was further directed by court order to pay, on March 15, 1972, the Federal estate taxes alleged to have already been paid.

On November 22, 1971, Gelderman filed a rule to show cause against both Levinsons to recover the assets of the estate and against the defendant specifically for failure to deliver the estate's books and records. Continuances were granted to both Levinsons on the rules to show cause. Thereafter, on February 25, 1972, the State filed a motion for the defendant to produce certain documents. Several witnesses testified that the defendant had not been cooperative with respect to turning over documents of the estate.

On February 5, 1973, the State of Illinois by leave of court filed a petition for a rule to show cause directed against both Levinsons as to why they should not be held in criminal contempt of court for conduct which had obstructed the administration of justice. On March 21, 1973, the State, with leave of court, filed an amended petition for rule to show cause and a second amended petition was filed on June 28, 1973. This later amended petition for rule to show cause forms the basis of this appeal.

In March of 1973, while the above proceedings were pending in the probate division, there was a Cook County grand jury investigation looking into the conduct of the defendant and I. Harvey Levinson in connection with the decedent's estate. Subpoenas were issued and evidence was gathered which was later introduced at the contempt trial.

The contempt action was continued from time to time and on April 23, 1974, the defendant filed a motion to dismiss the second amended petition on the grounds that the suit was barred by laches and the statute of limitations. Also, on June 6, 1974, the defendant filed a motion to quash and suppress the evidence obtained by the grand jury process, claiming that the petition and answers to the bill of particulars in the instant case were based in part upon information obtained from secret grand jury proceedings. Both of these motions were denied.

On January 5, 1975, I. Harvey Levinson was adjudged incompetent to stand trial. The case proceeded to trial against the defendant on March 22, 1976, and the defendant waived his right to a jury trial.

At certain portions of the defendant's testimony, objections were raised and sustained on hearsay grounds when the defendant attempted to relate the content of several conversations with his father. The defense was later permitted to make an offer of proof as to these conversations over the State's objection. The court later sustained the State's objection to this offer of proof but allowed it to stand in the record. In this offer of

proof the defendant stated that he and his father frequently quarreled over matters concerning the decedent's estate. The defendant testified that he acted only at his father's direction and insistence with regards to the handling of the estate's assets.

On May 25, 1976, the defendant was found guilty of criminal contempt. On May 27, 1976, a hearing in aggravation and mitigation was held. In aggravation it was revealed that the defendant had been disbarred. The defendant did not present any matters in mitigation. The defendant was sentenced to five years imprisonment.[1] It is from this conviction for criminal contempt that the defendant brings the present appeal.

The defendant's initial argument on appeal is that the statute of limitations bars this criminal contempt action. At oral arguments the defendant abandoned the argument set forth in his brief that the offense was subject to the 18-month statute of limitations for misdemeanors (see Ill. Rev. Stat. 1975, ch. 38, par. 3—5). The defendant alleges, however, that the charges brought against him are barred by the general three-year statute of limitations for felonies (see Ill. Rev. Stat. 1975, ch. 38, par. 3—5). He contends that all of the allegations set forth in the rule to show cause indicate that the last act of criminal contempt was complete on or before January 6, 1970, when the purported final account was filed. Therefore, he argues, since the first petition for a rule to show cause was filed on February 5, 1973, more than three years later, the suit is barred. We disagree.

The State alleges that the statute of limitations does not bar this action because the defendant was involved in a series of contemptuous conduct extending well into 1973. In *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 173 N.E.2d 417, the respondent was charged, on March 18, 1958, with criminal contempt for holding himself out to the public as qualified to perform legal services and engaging in the unauthorized practice of law. The charge was based primarily upon letters written by the respondent on February 5, 1953, January 5, 1956, and two dates in 1957. The court held that the statute of limitations was not a bar and that under the circumstances it was not unfair or unjust to make inquiry of the respondent's conduct dating back to 1953. The court explained that "[i]n some cases the statutory period of limitation might be considered too long, while in others, such as a series of contemptuous conduct over an extended period of time, might justify charges long after the statutory period of limitation." (*Barasch*, at 412.) Without addressing the issue of whether a strict application of the statute

---

[1] The defendant's attorney revealed at oral arguments that the defendant had been released on $100,000 bond pending appeal.

of limitation is warranted in the instant appeal, we hold that the statute of limitations is not a bar to this action.

Offenses such as conspiracy and embezzlement may involve a series of acts. Illinois cases have recognized that these are continuing offenses and are not complete until the last known act in furtherance of the offense had been completed. (*People v. Adams* (1969), 106 Ill. App. 2d 396, 245 N.E.2d 904; *People v. Konkowski* (1941), 378 Ill. 616, 39 N.E.2d 13.) As stated previously, the defendant claims that the last act was the filing of the final account on January 6, 1970. However, the evidence reveals that the defendant performed numerous acts in furtherance of the scheme to embezzle money from the estate well past 1970. For example, the final account stated that the defendant had paid over $28,000 in certain Federal estate taxes when, in fact, these taxes had not been paid. On October 14, 1971, the Internal Revenue Service issued a statement that over $50,000 was due in estate taxes including interest and penalties. When it became evident that the estate taxes had not been paid, the defendant simply represented in a petition filed on September 30, 1971, to vacate the September 2, 1971, order discharging I. Harvey Levinson as administrator, that certain Internal Revenue matters had not yet been resolved. Subsequently, on March 15, 1972, the court ordered the administrator de bonis non to pay these estate taxes. In addition, the record reveals that the defendant failed to turn over various documents concerning the decedent's estate to interested parties after the final accounting. An attorney for the estate's surety testified at the contempt proceeding that he requested certain documents in 1970 but the first time the defendant turned over any documents to him was in February of 1972. Similarly, the defendant failed to comply with requests made in 1971 by Gelderman, as administrator de bonis non, to turn over certain estate documents. At a hearing on February 18, 1972, the defendant stated that he would turn over everything in his possession concerning the decedent's estate to the administrator de bonis non, but he refused to answer questions about the estate taxes on self-incrimination grounds. It is unclear from the record whether these documents were ever relinquished.

Also, the failure to report misstatements and the failure to restore estate funds constitutes elements of the defendant's continuing fraudulent scheme which extended well past the date of the filing of the purported final account.

■■ The defendant cites *Beattie v. People* (1889), 33 Ill. App. 651, in support of his statute of limitations argument. However, *Beattie* is distinguishable from the instant case in that it concerns a specific offense as opposed to a continuous offense carried out over a period of time. The

defendant's conduct in the instant case clearly falls into the category of a continuing offense as set forth in *People v. Adams* (1969), 106 Ill. App. 2d 396, 245 N.E.2d 904, and *People v. Konkowski* (1941), 378 Ill. 616, 39 N.E.2d 13. Consequently, since the present action was commenced with the first filing of a petition for rule to show cause on February 5, 1973, and since the defendant embarked upon a course of conduct in furtherance of his illegal acts and doings well past 1970, the suit is not barred by the applicable statute of limitations. See Ill. Rev. Stat. 1975, ch. 38, par. 3—5.

The defendant's second contention is that his conviction should be reversed because it was based almost entirely upon evidence gathered through an abuse of the grand jury process and in violation of grand jury secrecy. We disagree.

It appears that during the instant contempt proceedings, a grand jury investigation was undertaken in connection with the decedent's estate. At the contempt proceedings numerous documents, which several witnesses testified had been produced in response to a grand jury subpoena, were introduced into evidence. These documents included records of the defendant's, his father's personal bank accounts opened ostensibly for the decedent's estate, as well as other papers directly connected with the estate.

■■ The Illinois Supreme Court has held that where a defendant does not claim a possessory interest in the evidence seized, he has no standing to complain of its use at trial. (*People v. French* (1965), 33 Ill. 2d 146, 210 N.E.2d 540.) In the instant case the evidence clearly indicates that the defendant did not have a possessory interest in the subpoenaed documents. These documents were the possessions of the decedent's estate which came into the hands of the defendant and his father only in their respective capacities as attorney and administrator of the estate. Therefore, the defendant has no standing to object to the introduction of these documents at the trial. Furthermore, the same document could have been produced at the trial absent any grand jury subpoena.

■■ Likewise, the defendant is incorrect in his assertion that the introduction of the documents violated his privilege against self-incrimination, since he was nothing more than a mere custodian of these records by virtue of his involvement in the decedent's estate (see *People v. Ryan* (1951), 410 Ill. 486, 103 N.E.2d 116). Finally, the record provides no evidence to suggest that the grand jury investigation connected to the instant case was instituted in bad faith (see *People v. Polk* (1961), 21 Ill. 2d 594, 174 N.E.2d 393), or in violation of grand jury secrecy. See *People v. Johnson* (1964), 31 Ill. 2d 602, 203 N.E.2d 399.

The defendant's third argument on appeal is that the trial court erred in denying the admission into evidence testimony concerning certain conversations he had with his father. It is the defendant's contention that

the court's refusal to allow this offer of proof precluded him from countering the State's argument that the defendant and his father acted in concert in a scheme to embezzle the estate's assets. This contention is without merit.

■ The right to produce and examine witnesses is not violated where the testimony sought to be admitted is not material and relevant to any valid defense to the crime charged. (*People v. Gischer* (1977), 51 Ill. App. 3d 847, 366 N.E.2d 521.) The defense in the instant case consisted of the testimony of one witness, the defendant himself. At one point in his testimony the defendant stated that he did not want to participate in the decedent's estate but did so at the direction of his father. Through his testimony the defendant tried to establish his unfamiliarity with estate matters and to show that his father was basically in charge of the administration of the decedent's estate, while the defendant was simply following his father's orders. At several points in his testimony, the defendant was about to testify about statements his father made, but objections were sustained. This testimony would not have been relevant to the defense of ignorance since the defendant's testimony had already established that he was aware that something was wrong with the administration of the estate.

■ At best, the excluded evidence could have shown that the defendant was a reluctant participant in the scheme to defraud the estate. This, however, is no defense. The defendant's supposed good intentions do not justify his knowing participation in a scheme to defraud the decedent's estate. Therefore, the exclusion of this evidence was not error.

The defendant's final argument is that the sentence he received was illegal because he was not advised of his option to elect under which sentencing statute he was to be sentenced. The defendant also claims that his sentence was excessive. We disagree.

■ This court recently held that the power to punish for contempt is not created or limited by any statutory provisions (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229, 371 N.E.2d 294). The court stated:

> "The power of a court to punish for contempt does not depend on constitutional or legislative grant, but is inherent in all courts as essential to proper and effective functioning of the courts and to the administration of justice.* * * Thus, the power of the courts of this state and the penalties to be imposed in a contempt proceeding, are neither created nor limited by act of the legislature." (*47th & State Currency Exchange*, at 233-34.)

Hence, the determinative sentence of five years in the instant case was entirely proper and the defendant cannot complain that he was not advised of an option to elect since no option exists in contempt cases.

■■ The defendant also complains that the sentence he received was excessive. Absent an abuse of discretion, the sentence imposed by the trial court should not be altered upon review since the trial court is normally in the best position to choose a suitable sentence. (*People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In the case at bar the trial court was presented with an attorney who embezzled funds from a very large estate, who filed false documents with the court and who had been disbarred. Considering these relevant factors and in light of the higher standard of conduct expected of those who as attorneys are in a position of trust and have direct involvement in the administration of justice, the sentence was proper, and the court did not abuse its discretion.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.