Melvin E. LEVINSON, Plaintiff–
Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 91–1899.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 23, 1992.

Decided July 15, 1992.

Melvin E. Levinson, Wilmette, for plaintiff-appellant.

Sharon J. Coleman, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Div., Chicago, Gary R. Allen, William S. Estabrook, Bridget Rowan, John A. Lindquist, III, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before COFFEY, FLAUM, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Once again, we attempt to untangle the web of Melvin Levinson's past deceit.[1] This time, the issue is whether unpaid income taxes from 1966 to 1969 should be included in Levinson's discharge in bankruptcy. The bankruptcy court and the district court held that they were not, and we affirm.

## BACKGROUND

Levinson, a former attorney, embezzled money from his clients but did not declare it as income on his tax returns between 1966 and 1969. In 1978 the Internal Revenue Service sought to recover the tax on this income by asserting deficiencies against the plaintiff for each of these years. Plaintiff responded by challenging

---

1. For prior cases on the topic, *see Klingman v. Levinson,* 877 F.2d 1357 (7th Cir.1989); *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987), *aff'g Klingman v. Levinson,* 66 B.R. 548 (N.D.Ill. 1986), *aff'g In re Levinson,* 58 B.R. 831 (Bankr. N.D.Ill.1986); *People v. Levinson,* 75 Ill.App.3d 429, 31 Ill.Dec. 307, 394 N.E.2d 509 (1979), *cert. denied,* 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980).

these deficiencies, except for 1969, in tax court. Pursuant to an agreed-upon stipulation, the parties settled the case, with Levinson agreeing to pay $74,815.27, comprising back taxes and penalties for negligence, 26 U.S.C. § 6653(a), and failure to file a return in 1968, 26 U.S.C. § 6651(a). The government, in turn, agreed that Levinson did not have to pay any penalties for fraud under 26 U.S.C. § 6653(b).

As to the 1969 taxes, plaintiff allowed judgment to be entered against him in the district court for $44,840.23, including a negligence penalty. In order to reach this accord, the government again agreed not to seek a fraud penalty.

In 1982 Levinson filed a Chapter 7 bankruptcy petition, and in 1985 he received his discharge in bankruptcy, releasing him from all dischargeable debts. Soon thereafter he filed suit in the bankruptcy court to determine whether his 1966–69 tax debts to the government were dischargeable. The government argued that the debts were not dischargeable because Levinson's returns for those years were fraudulent, and therefore his debt could not be expunged by bankruptcy. 11 U.S.C. § 523(a)(1)(C).[2] The bankruptcy court agreed with the government, finding the debts nondischargeable, and the district court affirmed.

## ISSUES

Levinson raises two main issues on appeal. First, should res judicata, collateral estoppel, or judicial estoppel have barred the government from arguing that his tax debts were nondischargeable because of fraud? Second, if these doctrines were inapplicable, did the government either fail to give adequate notice of its intent to argue fraud or fail to prove that the returns were fraudulent?

**2.** Section 523(a)(1)(C) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

## DISCUSSION

Normally, tax debts over three years old are dischargeable in bankruptcy. 11 U.S.C. § 523(a)(7)(B). Such debts are not dischargeable, however, if the debtor made a "fraudulent return or willfully attempted to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The government relied on this exception before the bankruptcy court, arguing that plaintiff's debts were not dischargeable because he knew that the money he embezzled had to be declared as income, but intentionally and fraudulently neglected to report it.

█ Levinson, however, contends that res judicata should apply to prevent the government from claiming fraud. Res judicata "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Because the government could have asserted that his returns were fraudulent when determining his tax liability, Levinson argues, res judicata prevents it from now claiming fraud as a defense to his discharge in bankruptcy. In short, the argument is that the government had its chance to allege fraud and did not do so, and therefore the issue must be treated as having been resolved in Levinson's favor.

The Supreme Court's decision in *Brown v. Felsen* rejected this very argument, and controls here. In *Brown* the parties settled a suit by consenting to a judgment based on a stipulation, but neither the stipulation nor the judgment revealed the basis for the debtor's liability. When the debtor later filed for bankruptcy the creditor claimed the debt was nondischargeable, having been the result of the debtor's fraud. The debtor responded by claiming that the consent judgment, which made no

(1) for a tax or customs duty—

\* \* \* \* \* \*

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

mention of fraud, was res judicata on the issue because the creditor could have increased his recovery by arguing fraud in the collection proceeding, but declined to do so. The Supreme Court disagreed, finding that applying res judicata in such circumstances would neither protect the interests served by res judicata (e.g., encouraging reliance on judicial decisions, barring vexatious litigation, and freeing courts to resolve other disputes, *id.* at 131, 99 S.Ct. at 2209), nor serve the policies of bankruptcy law, one of which is to give a "fresh start" to the *honest* debtor. *Id.* at 128, 99 S.Ct. at 2208. Central to the Court's decision was the fact that the creditor was not presenting some new ground for recovery, or seeking to increase his recovery, or challenging the validity of a prior judgment. Rather, he was simply trying to defend his pre-existing rights against the debtor's attempt to evade the debt by means of the Bankruptcy Act. In such circumstances, it is the debtor who "has upset the repose that would justify treating the prior ... proceeding as final, and it would hardly promote confidence in judgments to prevent [the creditor] from meeting [the debtor's] new initiative." *Id.* at 133–34, 99 S.Ct. at 2211. So it is here. The government is not trying to increase Levinson's tax debt by tacking on fraud penalties; if it were, res judicata would apply. Instead, it is simply responding to Levinson's bankruptcy petition and attempting to prevent a legitimate debt from being discharged. The *Brown* court refused to apply res judicata on nearly identical facts, and we follow suit.

Furthermore, the fact that the government *could* have claimed fraud in the earlier proceedings does not mean that it was obliged to do so in order to protect its award from a bankruptcy discharge. Such a rule would lead to inefficiency and unnecessarily complicated litigation. As the *Brown* court said in rejecting the debtor's res judicata argument,

> The rule proposed by respondent would force an otherwise unwilling party to try [dischargeability] questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future. In many cases, such litigation would prove, in the end, to have been entirely unnecessary[.]

*Id.* at 135, 99 S.Ct. at 2211. This is especially true in collection cases, where flexibility and compromise are essential to the speedy resolution of disputes. *See id.* at 137 n. 8, 99 S.Ct. at 2212 n. 8. ("Default and consent judgments are common in collection proceedings. For the creditor, the prospect of increased attorney's fees and the likelihood of driving the debtor into bankruptcy may offset the advantages of exemplary damages or other extraordinary remedies.") For example, the government may have received more from Levinson if it had sought fraud penalties in the earlier proceedings, but it chose not to in order to effect a settlement and insure some recovery. Res judicata ought not be applied so as to inhibit such compromises. We would not want the government, or any creditor, to feel compelled to bring every conceivable charge against a debtor lest that debtor should declare bankruptcy and use the creditor's spirit of compromise as a bar to its right to defend its award.

Finally, application of res judicata in cases like the one at bar would run contrary to the underlying purpose of the Bankruptcy Code, which is to provide a "fresh start" to the "honest but unfortunate debtor." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934); *see also Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). As one court recently recognized, the parties to a non-bankruptcy proceeding may often be unconcerned with issues, such as fraud, that only become significant when the debtor files for bankruptcy. Applying res judicata to such proceedings could prevent the bankruptcy court from ever discerning whether the debtor is in fact honest and deserving of the Code's shelter.

At the time of a pre-bankruptcy proceedings [sic], a debtor may not foresee the possibility of, or need for, filing a petition for protection under the Bankruptcy

Code. Therefore, it would be inconsistent with the "fresh-start" policy of the Bankruptcy Code to permit a pre-bankruptcy proceeding in a tax court in which the debtor could have contested the issue of "fraud," but for whatever reason did not, to foreclose that debtor from actually litigating the fraud issue in the bankruptcy court for the purpose of determining the dischargeability of tax liabilities. *In re Graham,* 131 B.R. 275, 279 (E.D.Pa. 1991). Just as the debtor in *Graham,* who agreed to a stipulation including penalties for fraudulent underpayment of taxes, was allowed to deny fraud in his discharge proceeding, so must the government, which agreed to a stipulation precluding fraud penalties, be allowed to claim fraud in Levinson's discharge proceeding. By refusing to apply res judicata in either case, the bankruptcy court has the opportunity to determine the truth, and so implement the policies behind the Code, rather than binding the parties to strategic decisions made in a different context.

 Levinson next contends that res judicata's cousin, collateral estoppel, should forestall the government from reviving the fraud issue. While res judicata bars claims that were or could have been raised in an earlier proceeding, collateral estoppel only bars the resuscitation of questions that have already been actually litigated and decided. To be precise, collateral estoppel requires that (1) the issue sought to be precluded is the same as that involved in a prior action, (2) the issue was actually litigated, (3) determination of the issue was essential to the final judgment, and (4) the party to be estopped was fully represented in the prior action. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987). The second element is absent here—the parties never actually litigated the fraud issue. The 1966–68 tax liability was settled pursuant to a stipulation, and the 1969 tax liability was finalized in a consent judgment. In neither instance was the question of fraud actually contested or decided by a court. Indeed, it is well settled that res judicata and collateral estoppel "do not apply where, as here, the issues or causes of action sought to be precluded in a subsequent proceeding were allegedly determined in a stipulation or a judgment by consent." *Gall v. South Branch Nat'l Bank of South Dakota,* 783 F.2d 125, 127 (8th Cir.1986); see also *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir.1990). There is an exception to this general rule where the parties to a stipulation or consent judgment intended to foreclose an issue from future litigation. *Klingman,* 831 F.2d at 1296. In this case, however, there is no indication of any such intent; the consent judgment fails to mention fraud at all, and the stipulation merely reveals that there will be no fraud penalty. *Cf. La Preferida,* 914 F.2d at 907 (consent judgment did not support collateral estoppel where it was ambiguous and did not reflect the parties' intent as to future litigation). Accordingly, Levinson cannot claim the benefits of collateral estoppel.

 In a third variation on the same theme, Levinson argues that judicial estoppel (also known as estoppel in pais or the doctrine of inconsistent positions) forecloses the government's fraud theory. Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so. *In re Cassidy,* 892 F.2d 637, 641 (7th Cir.), cert. denied, *Cassidy v. Commissioner,* — U.S. ——, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990). It is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. *Scarano v. Central R.R. Co.,* 203 F.2d 510, 513 (3d Cir.1953) (judicial estoppel prevents parties from playing "fast and loose with the courts.") Although the doctrine is not reducible to a pat formula, we have recognized certain boundaries. First, the later position must be clearly inconsistent with the earlier position. *Cassidy,* 892 F.2d at 641. Also, the facts at issue should be the same in both cases. *Himel v. Continental Illinois Nat'l Bank & Trust Co.,* 596 F.2d 205, 210–11 (7th Cir.1979). Finally, the party to be estopped must have convinced the first court to adopt its position; a litigant is not

forever bound to a losing argument. *See Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,* 910 F.2d 1540, 1548 (7th Cir.1990); *Cassidy,* 892 F.2d at 641.

We will not apply judicial estoppel in this case because the government's position is not inconsistent. In the prior cases the government agreed not to seek fraud penalties; it did not admit that no fraud had occurred. Nor did the tax court or district court accept the agreed orders as proof that Levinson had not committed fraud. "Judicial estoppel is applied with caution to avoid impinging on the truthseeking function of the court ... [and] cannot apply without some decision or admission" as to whether a party actually engaged in alleged misconduct. *Teledyne Industries, Inc. v. NLRB,* 911 F.2d 1214, 1218–19 (6th Cir.1990). Further, the government is not attempting to increase Levinson's tax liability by now claiming fraud where before it let the issue pass. Rather, it is maintaining the position it has always held—that the plaintiff owes a certain amount in back taxes and is obligated to pay it. Because the government has not reversed itself from any prior position, plaintiff's argument fails.

■ Switching gears at last, Levinson argues that the bankruptcy court erred in finding that he had filed fraudulent tax returns, asserting that the government never proved its case. At the outset, he claims that he never received adequate notice that the government intended to argue fraud. The bankruptcy court's pretrial order, however, clearly states that two of the issues in the cases were plaintiff's underreporting of income and failure to file a timely return. Moreover, the government wrote in its pretrial statement that one of the issues was "Whether Melvin Levinson made fraudulent tax returns during the years in question or willfully under reported [sic] his income." Government's Br., App., at 4. It is apparent that Levinson had sufficient notice of the government's theory of the case.

■ The plaintiff also maintains that the government never met its burden of proving that he had intentionally filed fraudulent returns, and that therefore the bankruptcy court's decision was erroneous. We review the bankruptcy court's findings of fact under the clearly erroneous standard, Fed.Rules.Bankr.Proc.Rule 8013, and will not overturn them so long as they are "plausible in light of the record viewed in its entirety." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The bankruptcy court conducted a five-day trial, hearing evidence from Levinson, whom it found lacked credibility,[3] and Francine Klingman, a former client he had embezzled from. The court was also able to rely on a group of published decisions recounting the facts concerning the plaintiff's misappropriation of funds from one client's estate and another's trust corpus between 1966 and 1969. *See People v. Levinson,* 75 Ill.App.3d 429, 31 Ill.Dec. 307, 394 N.E.2d 509 (1979), *cert. denied,* 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980); *In re Levinson,* 58 B.R. 831 (Bankr.N.D.Ill.1986), *aff'd, Klingman v. Levinson,* 66 B.R. 548 (N.D.Ill. 1986), *aff'd, Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987). Having reviewed these decisions and heard the testimony, and recognizing that Levinson had been a practicing attorney and was well aware of his obligation to report this income, the court had a sufficient basis for concluding that Levinson had intentionally filed fraudulent tax returns. We also note that the bankruptcy court required the government to prove its case by clear and convincing evidence. Since that decision, the Supreme Court has decided that the preponderance of the evidence standard should apply in such cases. *Grogan,* 111 S.Ct. at 659–661. Thus, the government did more than it had to, and the bankruptcy court's finding of fraud was not erroneous.

---

**3.** Very early on in his testimony, Levinson stated that after law school he went to Washington, D.C. to clerk for Justice Jackson of the United States Supreme Court. Upon further questioning, he stated first that he had worked for Justice Jackson for less than a day, then that he had never worked for him at all, and finally that he had never even worked in Washington, D.C.

Levinson's final claim is that he could not have filed a fraudulent tax return in 1968 because he did not sign his return for that year, and under 26 U.S.C. § 6061 this is equivalent to filing no return. As the bankruptcy court recognized, this argument is irrelevant. Section 523(a)(1)(C) of the Bankruptcy Code speaks only of "making" a fraudulent return, not "filing" one. And, in any event, § 523(a)(1)(B) prevents the discharge of any tax debt due on an unfiled return. Thus, Levinson loses either way.

## CONCLUSION

Neither res judicata, collateral estoppel, nor judicial estoppel apply to the government's use of fraud as a defense to the plaintiff's attempt to discharge his tax debt in bankruptcy. The government was not obligated to press this theory in the earlier proceedings, and its failure to do so did not prevent it from claiming fraud later, when the plaintiff had thrown a wrench into the works by taking bankruptcy. In addition, Levinson had adequate notice of the government's plan to argue fraud, and the bankruptcy court committed no error in finding fraud had been committed. The plaintiff is given thirty days to show cause why sanctions should not be imposed. *See* Fed.R.App.P. 38; *A–Abart Electric Supply, Inc. v. Emerson Electric Co.*, 956 F.2d 1399 (7th Cir.1992); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989).

AFFIRMED.