M. Barbara CHRISTMAN, Janet M. Toolson, John Archbold, and Ben O. Carroll on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BRAUVIN REALTY ADVISORS, INC., Brauvin Realty Advisors II, Inc., Brauvin Realty Advisors III, Inc., Brauvin Realty Advisors IV, Inc., Corporate General Partners; Jerome J. Brault; Brauvin Real Estate Funds, LLC, Defendants.

No. 96 C 6025.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 22, 1999.

Richard S. Kohn, The Mills Law Firm, Ronald L. Futterman, Michael L. Behn, Futterman & Howard, Chtd., Larry D. Drury, Larry D. Drury & Associates, Chicago, IL, for Plaintiffs, M. Barbara Christman, Janet M. Toolson, John Archbold and Ben O' Carroll.

William Lynch Schaller, John M. Murphy, Baker & McKenzie, Chicago, IL, for Defendants, Jerome J. Brault, Brauvin Realty Advisors, Inc., Brauvin Realty Advisors II, Inc., Brauvin Realty Advisors III, Inc. and Brauvin Realty Advisors IV, Inc.

John J. Cummins, Canepa & Cummins, P.C., Chicago, IL, for Intervening Defendants, The Fabick Employee Profit Sharing Plan et al.

Robert W. Tarun, Jeffrey A. Leon, Winston & Strawn, Chicago, IL, for Nominal Defendants, Brauvin High Yield Fund L.P., Brauvin High Yield Fund L.P. II, Brauvin Income Plus L.P. III and Brauvin Corporate Lease Program IV L.P.

## MEMORANDUM OPINION AND ORDER

GOTTSCHALL, District Judge.

This action arises from an attempt by the general partners to sell the assets of limited partnerships to an entity owned, at least in part, by the managing general partner. On August 11, 1998, this court held that the proxy voting procedure used by the general partners to obtain the limited partners' approval for the transaction was in violation of the limited partnership agreement. The defendants[1] have brought this Motion to Dismiss Counts VI–IX of Plaintiffs' Complaint as Moot, and for Partial Summary Judgment as to Certain Claims, arguing that this court's ruling on the proxy voting issue has dramatically limited the issues remaining for trial. For the reasons set forth below, the motion is granted in part and denied in part. In addition, this court grants the plaintiffs' previously filed motion to dismiss the counterclaim.

## BACKGROUND

A brief summary of the background of this action is all that is necessary for this motion. The plaintiffs are limited partners of four limited partnerships (hereinafter, "the Brauvin partnerships"). The claims arise out of a proposed transaction in which the assets of the Brauvin partnerships would be acquired by a company, Brauvin Real Estate Funds, L.L.C., which is owned, at least in part, by Jerome J. Brault. Brault also serves at the managing general partner of the Brauvin partnerships.

---

1. The motion has been brought on behalf of all defendants except Brauvin Real Estate Funds, LLC, which is the limited liability company formed to acquire the assets of the limited partnerships. Brauvin Real Estate Funds, LLC has moved to adopt the motion.

The plaintiffs, suing on behalf of a class consisting of all limited partners, have asserted fourteen counts in their Second Amended and Supplemental Complaint ("SASC").[2] The plaintiffs allege that by entering into the "self-dealing" transaction, the general partners breached their fiduciary duties, breached terms of the partnership agreements, and breached the covenant of good faith and fair dealing. In addition, the plaintiffs claim that in trying to obtain the limited partners' approval for the transaction, the defendants violated the Illinois consumer fraud statute, federal and Illinois securities laws, and the Delaware limited partnership statute.

The partnership agreements prohibit the general partners from engaging in self-dealing transactions. In order to consummate the proposed transaction with Brauvin LLC, the general partners called for a meeting at which the limited partners could vote to amend the partnership agreement to permit self-dealing transactions and, simultaneously, to approve the proposed transaction.

On August 23, 1996, the general partners sent proxy solicitation materials to the limited partners of the Brauvin partnerships. The proxy materials informed the limited partners of the proposed transaction and advised the limited partners that a meeting would be held on September 24, 1996 for the purpose of voting on the proposed transaction. The plaintiffs claim that these materials (and subsequent materials) were misleading because, among other things, they did not clearly identify Brault's interest in the transaction. The materials included a proxy card, which allowed the limited partners to vote without attending the meeting. This court ordered the meeting postponed until October 9, 1996. On September 27, 1996, counsel for the plaintiffs sent a letter to all limited partners, urging them to revoke proxies in favor of the proposed transaction. This letter is the basis for counter-

claims by the defendants against plaintiffs and plaintiffs' counsel. The defendants/counterplaintiffs charge that the letter failed to comply with federal regulations governing proxy solicitations.

After several postponements, on November 9, 1996, the meeting was held, and the proposed transaction was approved by a vote of the limited partners. However, the proposed transaction has not been consummated. On January 28, 1998, this court referred this matter to a Special Master to recommend procedures for the disposition of the assets of the limited partnerships and to attempt to settle this litigation. Ruling on pending motions was held in abeyance. On August 11, 1998, after being informed by the Special Master and the parties that a ruling on the legality of the proxy voting procedure would assist the prospects for a resolution, this court ruled that the proxy voting procedure employed to approve the transaction was contrary to the voting procedure set out in the limited partnership agreements. On August 27, 1998, the defendants filed the motion at issue here.

In November 1998, the Special Master informed this court that he does not believe that the parties can agree on procedures to dispose of the assets, and that the case, in its present posture, cannot be settled. At the Special Master's request, the reference has been withdrawn and the case has been set for trial.

## DISCUSSION

The defendants argue that the August 11, 1998 ruling mooted most of the other claims in this action. They contend that [t]he remaining claims which are central to plaintiffs' complaint, i.e., claims relating to alleged misrepresentations and omissions made in the proxy statements (Counts VI–IX), claims for breach of provisions in the partnership agreements governing amendments and gov-

---

2. In a separate order, this court has granted the Named Plaintiffs' motion to certify the class and their motion for leave to file a third amended complaint. However, because the present motion was filed earlier, it addresses the claims in the SASC.

erning the sale of assets to General Partners (Count II, ¶ 72(7); Count III, ¶ 78; Count V, ¶ 85), and a claim for breach of an implied covenant of good faith and fair dealing (Count V), should be dismissed because they have been rendered moot by this Court's ruling that proxy voting was invalid *per se*. No further injunctive relief can be obtained, and the only potential damages are those already triggered by this Court's proxy voting ruling on August 11, 1998. The Limited Partners have sustained no separate damages as a result of statements made in connection with the proxy solicitation or as a result of the defendants' pursuit of the Brauvin LLC transactions.

(Defs.' Mem. in Supp. at 1–2.) In addition, defendants argue that the breach of fiduciary duty claims (Counts I, II, and XIV) should be disposed of by summary judgment because any damages suffered by the limited partners were not caused by the alleged breaches. More specifically, defendants argue that they would have employed the invalid proxy voting procedure for any transaction, so the defendants could not have lawfully obtained the approval of the limited partners for any transaction. Defendants also argue that several other claims are moot.

## I. The Claims Arising From the Proxy Solicitations

In Count VII, plaintiffs claim that the defendants employed misleading proxy solicitations in violation of SEC Rule 14a–9. Defendants argue that this claim is moot because this court's August 11, 1998 order invalidated the vote. Defendants contend that the proxy solicitation could not have been "an essential link in effecting the proposed corporate action," *see United Paperworkers International Union v. International Paper Co.*, 801 F.Supp. 1134, 1139–40 (S.D.N.Y.1992), because the proposed transaction has been precluded by this court's ruling.

The plaintiffs previously appeared to acknowledge that this court's ruling on the proxy voting issue could moot the securities claims. In a July 31, 1998 letter to the court, plaintiffs stated that "if the plaintiffs prevail on their proxy voting motion, trial of the securities claims may not be necessary." In addition, plaintiffs have argued that the defendants' counterclaims have been mooted by this court's decision that the proxy voting procedure was invalid.

Plaintiffs now claim that their proxy voting claims (but not the counterclaims) should survive.[3] They argue that the alleged proxy fraud damaged the limited partnerships. They contend that in the absence of the proxy fraud, the limited partners might have voted against the transaction. According to the plaintiffs, if the limited partners had voted against the proposed transaction, the partnerships would not have spent additional funds to attempt to consummate the transaction. The plaintiffs also claim that the limited partners would not have lost opportunities to sell the assets of the partnerships to other buyers and that the assets would not have diminished in value.

The causal relationship between the alleged proxy fraud by the defendants and the damages asserted by the plaintiffs is tenuous. It is possible that a vote against the proposed transaction would have prevented the defendants from spending any additional funds on the proposed transaction and would have caused the defendants to pursue other transactions. However, it seems at least equally plausible that the defendants would have continued to pursue the proposed transaction if the limited partners had voted against the proposed

---

**3.** There is, to say the least, considerable tension between the plaintiffs' position that their proxy fraud claims against the defendants should survive and their previous representations that a decision holding the proxy voting procedure invalid would moot the securities claims in this case. However, because the court had not ruled in the plaintiffs' favor by dismissing the counterclaims, the doctrine of judicial estoppel does not apply. *See* the discussion of judicial estoppel *infra* at 812–13.

transaction. Indeed given the plaintiffs' violation of the proxy regulations with their September 27, 1996 letter, this court believes it likely that the defendants would have continued to pursue the proposed transaction.

In addition to the questionable causal relationship between the alleged proxy fraud and the alleged damages, the plaintiffs, ironically, have made a persuasive argument why their own proxy fraud claims should be dismissed as moot. Prior to this court's August 11, 1998 decision, plaintiffs contended that a ruling invalidating the proxy voting procedure would moot the counterclaims alleging proxy fraud by plaintiffs and plaintiffs' counsel. In particular, in arguing that the counterclaims should be dismissed, plaintiffs maintained that

> [i]f the court determines that proxy voting was invalid because it was not provided for in the partnership agreements, then the entire solicitation process was without any legal validity. Even assuming that there were violations of SEC rules, these would be swept out on the tide. Since there was no legal injury, it would be impossible to demonstrate "injury in fact" or the likelihood that any injury could be redressed by the court.
>
> \* \* \* \* \* \*
>
> Damages seek to compensate for injuries stemming from past legal wrongs. If the defendants employed a voting procedure that was invalid *ab initio*, then no monetary injury could have flowed from any violations of SEC rules.

Any claim for injunctive relief or damages is also barred by the mootness doctrine. *Henco, Inc. v. Brown,* 904 F.2d 11, 13 (7th Cir.1990). The invalidity of proxy voting would render the controversy over the alleged misstatements by the plaintiffs moot. Any controversy that existed between the parties as the result of statements made in a proxy solicitation will be extinguished if the court holds that the proxy procedure was invalid.[4]

(Pls.' Reply Br. to Defs.' Opp. to Mot. to Dismiss Counterclaims at 3–4.)

■ This court's August 11, 1998 decision found that the voting procedure employed by the defendants was invalid because it violated the partnership agreements. The effect of this decision is to render the vote a nullity. Accordingly, the allegations of proxy fraud against the defendants—and, in the counterclaims, against plaintiffs and plaintiffs' counsel—are moot.[5] Plaintiffs may be able to recover the purported consequential damages, i.e., the damages for lost opportunities and diminution in value, under their proxy voting claim or under their breach of fiduciary duty claims.

Counts VI and IX allege claims under the Illinois Consumer Fraud Act (ICFA). Both counts allege that the proxies contained misrepresentations that misled the limited partners. As with Count VII, this court finds that the August 11, 1998 decision on proxy voting moots the ICFA claims.

Count VIII alleges a claim under the Illinois Securities Act of 1953. This count is also mooted by this court's August 11 decision. In addition, the Illinois Securities Act authorizes only equitable relief by way of injunction or rescission. Here, the court's ruling on the proxy voting issue has eliminated any need for such equitable relief. Plaintiffs argue that the claim should

---

4. Of course, at the time plaintiffs were arguing that a favorable ruling on the proxy voting claim would moot proxy fraud claims (or more accurately, counterclaims), they had not yet filed their own claims for proxy fraud against the defendants. The counterclaims were filed on or about October 15, 1996. The reply brief in support of plaintiffs' motion to dismiss the counterclaims was filed on No-

vember 29, 1996. Plaintiffs were not given leave to file their second amended and supplemental complaint until April 2, 1997. Prior to the second amended and supplemental complaint, plaintiffs had not alleged proxy fraud claims against the defendants.

5. Therefore, plaintiffs' motion to dismiss the counterclaim is granted.

survive because the Act permits a plaintiff to recover costs of the proceedings against the defendant. However, because this court's ruling on August 11 has mooted any claim for the equitable relief permitted by the Act, it is unclear how this action could still be construed as "proceedings" under the Act. Count VIII is dismissed as moot.

■ Defendants also argue that the plaintiffs' claims for breach of the partnership agreements (Count II, ¶ 78(7); Count III, ¶ 78) and for breach of an implied covenant of good faith and fair dealing (Count V) are moot. Unlike Counts VI through IX, however, these claims do not explicitly rest on allegations of proxy fraud or wrongdoing during the vote. Thus, this court's August 11 decision does not necessarily moot these claims. Instead, defendants argue that these claims are moot because the plaintiffs cannot establish that they suffered damages other than those already available as a result of this court's August 11, 1998 ruling.

The parties do not appear to agree on the scope of damages available as a result of the August 11 ruling. The defendants want to limit the damages to "out of pocket expenses" while the plaintiffs are arguing for broader damages, i.e., damages allegedly sustained by the limited partnerships after the 1996 vote in favor of the transaction. The court has not ruled on—indeed, the parties have not briefed—the appropriate measure of damages for the proxy voting claim. Until the issue of damages for the proxy voting claim is resolved, dismissal of the claims in Counts II, III and V would be premature.

## II. *The Breach of Fiduciary Duty Claims*

The defendants argue that none of the alleged fiduciary breaches caused damage to the limited partners. The defendants argue that, based upon the advice of counsel, they were committed to a proxy voting procedure for obtaining approval of *any* transaction to dispose of the partnerships' assets. The defendants argue that even if they had openly marketed the partnerships' assets, as plaintiffs contend the defendants were obligated to do, the defendants would have employed proxy voting to effect the transaction. According to defendants, such a vote, like the vote actually held, would have been void. Thus, defendants claim that no alternative transaction could have been lawfully approved and consummated. The defendants argue that the alleged fiduciary breaches did not deprive the limited partners of opportunities to dispose of the assets at more favorable terms because none of the opportunities would have been consummated.

However, the defendants' argument assumes that the plaintiffs (or some other limited partners) would have filed a lawsuit to prevent the consummation of an alternative transaction. The defendants argue that plaintiffs were unalterably committed to challenging the proxy voting procedures and have manifested their opposition to the voting procedures in briefs and in open court. The defendants claim that the plaintiffs should be judicially estopped from arguing that they would not have challenged the proxy voting procedure if it were employed for an alternative transaction.

"Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing a position when it is to its advantage to do so." *Levinson v. United States,* 969 F.2d 260, 264 (7th Cir.1992). The Seventh Circuit has noted that

> [a]lthough the doctrine is not reducible to a pat formula, we have recognized certain boundaries. First, the later position must be clearly inconsistent with the earlier position. Also, the facts at issue should be the same in both cases. Finally, the party to be estopped must have convinced the first court to adopt its position; a litigant is not forever bound to a losing argument.

*Id.* at 264–65 (citations omitted).

■ Here, the plaintiffs have not taken clearly inconsistent positions. Throughout

the litigation, the plaintiffs have argued that the proxy voting procedure was invalid. They have also argued that the proxy voting procedure would be invalid for any proposed transaction. Plaintiffs are not now arguing that proxy voting would be valid for alternative transactions. Instead, they are merely making the rather obvious point that if the general partners had actively marketed the assets of the partnerships and not attempted to acquire the assets in a self-dealing transaction, it is unlikely that the transaction with an unaffiliated purchaser, and the voting procedure to approve the transaction, would have been challenged.

The defendants liken the circumstances here to those in *Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436 (Del.1996). In *CERBCO*, the defendants George and Robert Erikson were directors, officers, and controlling shareholders of CERBCO. The Delaware Supreme Court found that the Eriksons had breached their duty of loyalty to the corporation by usurping a corporate opportunity. However, the Court found that the corporation did not suffer any damages for its lost opportunity as a result of the breach because the Eriksons, as majority shareholders, had the right to veto any transaction in which CERBCO would dispose of all or substantially all of its assets. The Court found that the Eriksons would have vetoed the transaction. Thus, the Court held that the Eriksons' majority shareholder "rights, not the breach, were the proximate cause of the nonconsummation of the transaction. Accordingly, transactional damages are inappropriate." *Id.* at 444.

The defendants here are claiming that, in contrast to the facts in *CERBCO*, it is the plaintiffs who have manifested an intent to "veto" any transactions. The defendants argue that the plaintiffs' assertion of their right to vote according to the procedures set out in the limited partnership agreements, and not the defendants' breach or breaches, was the cause of any lost opportunities. However, as noted above, it is far from clear that the plaintiffs would have challenged a transaction that they perceived to be in their economic interest.

Summary judgment on the claims for breach of fiduciary duty is inappropriate at this time. It, of course, is unclear at this time whether the plaintiffs in fact suffered any "lost opportunities" damages.

### III. *The Remaining Counts*

The defendants argue that the claim for failure to provide partnership lists (Count III, ¶¶ 76–77) is moot because the general partners provided the lists pursuant to this court's order of September 20, 1996. Plaintiffs contend that this claim is not moot because it may be relevant if they seek to remove the general partners (*see* Count XIV, ¶ 141). If plaintiffs pursue removal of the general partners, they may provide evidence that the general partners resisted turning over the partnership lists, but it is unnecessary for the partnership list claim in Count III to remain. That portion of Count III is dismissed as moot. The defendants did not move to dismiss or for summary judgment as to Count XII (failure to pay dividends) and Count XIII (failure to provide partnership information). Therefore the court takes no action as to these claims. This court previously granted the plaintiffs' motion for summary judgment as to Count XI (improper advancement of partnership funds for litigation expenses), though the amount of funds advanced has not been determined.

### CONCLUSION

The defendants' motion to dismiss and for partial summary judgment [440] is granted in part and denied in part. Defendants' motion to dismiss is granted at to Counts VI through IX. Defendants' motion for partial summary judgment is denied except as to the claim for failure to provide partnership lists in Count III. The plaintiffs' motion to dismiss the counterclaim [71] is granted.