In re NORRIS GRAIN COMPANY, et al., Debtors.

NORRIS GRAIN COMPANY, Detroit HC, Inc., and Olympia Stadium Corporation, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy Nos. 85–218–BK–J–GP, 85–231–BK–J–GP and 85–232–BK–J–GP.
Adv. No. 90–111.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 7, 1992.

James H. Post, Smith Hulsey & Busey, Jacksonville, Fla., for plaintiffs.

Ann Reid, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is before the Court upon complaint of Norris Grain Company ("NGC"), Detroit HC, Inc. ("Detroit HC"), and Olympia Stadium Corporation ("Olympia") requesting a declaratory judgment that the tax assessments made by defendant were in violation of §§ 524 and 1141(d) and seeking to permanently enjoin defendant through its Internal Revenue Service from continuing any action to assess or collect such taxes. The parties entered a pretrial stipulation waiving their right to a trial and setting forth the relevant facts. Upon the pretrial stipulation, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

The parties stipulated to the facts as follows:[1]

1. On March 25, 1985 (the "Petition Date"), NGC filed a petition with this Court under Chapter 11 of the Bankruptcy Code. On March 27, 1985, two of NGC's wholly-

---

1. All references to the Pretrial Stipulation exhibits have been omitted.

owned subsidiaries, Detroit HC and Olympia, also filed voluntary petitions under Chapter 11 of the Bankruptcy Code. These cases were jointly administered.

2. NGC and its subsidiaries filed consolidate federal income tax returns. The Debtors used a fiscal year ending on February 28 (or February 29) of each year, so that their federal income tax return was due two and one-half months later, or May 15.

3. On April 3, 1985, this Court entered an order fixing July 23, 1985, as the last day to file proofs of claim against NGC, and July 25, 1985, as the last day to file proofs of claim against its subsidiaries (collectively, the "Bar Date").

4. The Debtors determined that their original income tax return for fiscal 1984 was in error, in that they had erroneously claimed a three million dollar deduction, and on May 14, 1985, they filed an amended return, reporting an increase in their fiscal 1984 tax liability in the amount of $1,690,-026. The original of that amended return was mailed to the Atlanta Service Center and a copy was sent to the internal Revenue Service ("IRS") in Jacksonville, Florida.

5. On May 31, 1985, the IRS filed a proof of claim in the amount of $365.75 for interest due as a result of the Debtors' late payment of their 1984 income taxes, to which the Debtors raised no objection. The Special Procedures staff of the IRS had reviewed the filing and assessment records of the IRS for the Debtors on May 20, 1985, and no further examination of the filing record was made by the IRS prior to the July 23, 1985, bar date.

6. On November 14, 1985, Debtors timely filed their original 1985 consolidated tax return, reporting a liability of $573,038. On November 26, 1985, the Internal Revenue Service filed its claim with respect to the Debtors' fiscal 1985 income tax liability.

7. On December 19, 1985, five months after the Bar Date, the IRS filed an "amended" proof of claim against the Debtors asserting a claim in the amount of $1,690,026 for 1984 income taxes.

8. On July, 1986, this Court entered an order confirming the debtors' second amended consolidated plan of reorganization (the "Plan"). In pertinent part, Section 3.4 of the Plan provided for the payment of the "Allowed Priority Tax Claims" of the Internal Revenue Service as follows:

"the Class 7 Claim of the Internal Revenue Service * * * shall be paid in full by deferred cash payments over a period of not exceeding six years after the date of assessment of such claims, having a value, as of the Effective Date, equal to the allowed amount of such Claim together with interest as required by law. Such payments will be made in equal annual installments on or before each of the first through sixth anniversary dates of the assessment of such Claim."

9. On August 15, 1986, the Debtors objected to the amended proof of claim filed by the Internal Revenue Service because such claim was filed after the Bar Date.

10. On September 25, 1986, the debtors filed an adversary proceeding pursuant to 11 U.S.C., Section 505(a), against the United States seeking, *inter alia*, declaratory relief regarding their objections to the claim of the United States for federal tax indebtedness.

11. On April 15, 1987, the United States filed a motion for enlargement of time in which to file its claim against the debtors for 1985 federal income taxes and interest.

12. On October 7, 1987, this Court from the bench announced it would grant the Government's motion for enlargement of time in which to file its claim against the Debtors for 1985 federal income taxes and interest. Also on that date, this Court conducted a consolidated trial on (i) Debtors' objections to the proof of claim filed by the Internal Revenue Service with respect to 1984 and (ii) Debtors' complaint against the United States for declaratory relief pursuant to 11 U.S.C., Section 505.

13. On December 3, 1987, this Court entered a final judgment (i) allowing the $365.75 claim by the United States for interest on the 1984 income taxes, (ii) disallowing the $1,690,026 IRS claim for 1984

income taxes, (iii) granting the IRS an enlargement of time for filing its $573,083 claim for 1985 income taxes and (iv) allowing the $573,083 claim for 1985 income taxes.

14. On December 9, 1987, the United States filed a notice of an appeal from the final judgment, seeking review of this Court's disallowance of its claim for 1984 income taxes. The Debtors filed a notice of cross-appeal regarding the order authorizing the IRS to file a late claim for the 1985 income taxes.

15. On November 27, 1990, 131 B.R. 747, the United States District Court for the Middle District of Florida entered an order affirming the final judgment of this Court. On January 23, 1991, the United States filed a notice of appeal from the District Court's order to the United States Court of Appeals for the Eleventh Circuit. Debtors have filed a timely cross-appeal. Both the appeal and the cross-appeal have been fully briefed, but the parties have not yet been apprised as to whether oral argument will be scheduled.[2]

16. On April 17, 1989, the IRS assessed federal income tax liabilities, penalties and interest against Debtor Norris Grain Company with regard to its fiscal year 1984 in the total amount of $2,826,115.17. Also on April 17, 1989, the IRS assessed federal income tax liabilities, penalties and interest against Debtor Norris Grain Company with regard to its fiscal year 1985 in the total amount of $1,015,033.71.

17. The Debtors received (i) an IRS assessment notice for 1984 taxes requesting payment within 10 days of $2,826,115.17 and (ii) an IRS assessment notice for 1985 taxes requesting payment within 10 days of $1,144,101.39, both of which notices were dated April 17, 1989.

18. On April 3, 1989, counsel for the Debtors was informed by the Office of the District Counsel, Internal Revenue Service, Jacksonville, Florida, that the Internal Revenue Service would take no action to collect the liabilities in question until resolution of the claim litigation. On or about May 3,

1989, counsel for the Debtors was informed by the Tax Division of the U.S. Department of Justice that the IRS would not file any lien notice, or act to levy or seize assets, or otherwise interfere with the reorganization of the Debtors or their assets, and, furthermore, that the IRS would abate the assessment of any portion of income taxes discharged by virtue of the disallowance of the income tax claim related thereto.

. . . . .

20. To date, Debtors have made no payments with respect to the claimed federal income tax liability for 1985 described above at paragraph 6.

The sole issue before the Court is whether the post-confirmation assessments by the IRS violated the discharge injunction of §§ 524(a) and 1141(d)(1).

### Conclusions of Law

Section 1141(d) sets forth the discharge provision for cases under chapter 11 of the Bankruptcy Code. It provides in relevant part:

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—

(i) a proof of claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; . . . .

Thus, § 1141(d) provides for the discharge of pre-petition debts upon the confirmation of the plan.

Section 524(a) gives effect to the discharge by creating a permanent injunction against the pursuit of discharged debts. The section reads in pertinent part:

---

2. After the stipulation was executed, oral argu-    ment was set for the week of March 23, 1992.

(a) A discharge in a case under this title—

.    .    .    .    .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

The discharge injunction promotes the bankruptcy goal of finality. The injunction is designed to preserve the integrity of the debtor's discharge, protecting it from subsequent actions of creditors. The Middle District of Florida has found that this is one of the most crucial facets of a bankruptcy case:

According to § 1141(d) of the Bankruptcy Code, confirmation of a Chapter 11 plan discharges the debtor from *all* debts which arose before the confirmation date. A discharge operates as an injunction against the commencement or continuation of an action against the debtor. 11 U.S.C. § 524(a)(2). "There is nothing more essential to a bankruptcy case than the preservation of the integrity of the debtor's discharge."

*In re Charter Co.*, 113 B.R. 725, 728 (M.D.Fla.1990) (quoting *In re Barbour*, 77 B.R. 530, 532 (Bankr.E.D.N.C.1987)). *See In re Jet Florida Systems, Inc.*, 883 F.2d 970, 972 (11th Cir.1989).

■ The injunctive provisions of the Bankruptcy Code are enforceable against the IRS equally as against all other creditors. *In re Schwartz*, 954 F.2d 569 (9th Cir.1992); *In re Moulton*, 133 B.R. 248, 251–52 (Bankr.M.D.Fla.1991); *In re Conti*, 50 B.R. 142, 145–46 (Bankr.E.D.Va.1985). Thus, the IRS cannot assess or collect taxes without bankruptcy court approval.

■ In the instant case, the IRS violated the permanent injunction of § 524(a) when it assessed the prepetition tax claims against the debtors. Under the Internal Revenue Code, assessment is a prerequisite to collecting taxes. 26 U.S.C. § 6501(a). Consequently, an assessment is "an act to recover a claim." *In re Olson*, 101 B.R. 134, 146 (Bankr.Neb.1989), *aff'd* 133 B.R.

1016 (D.Neb.1991). As part of the collection process, assessment is prohibited by the plain language of § 524(a)(2). *See e.g., In re Moulton*, 133 B.R. 248 (Bankr. M.D.Fla.1991) (filing of a Notice of Federal Tax Lien violated § 524) and *In re Conti*, 50 B.R. 142 (Bankr.E.D.Va.1985) (mailing of a "past due notice" to debtor violated § 524).

However, the assessments at issue in this case were made in an attempt to avoid the running of the statute of limitations and to preserve the government's rights should defendant prevail on its pending appeal. The assessment was made on paper only and defendant made no further attempt to pursue payment of the claims. Accordingly, plaintiffs were not harmed by the assessment and it is permitted to stand as issued, although this Court makes no ruling on the validity of such assessment.

It should be noted that although the assessment will be allowed to stand on the facts of this case, defendant should take measures to prevent a reoccurrence. The appropriate approach for a creditor in like circumstances is to file a proper motion for relief from the discharge injunction. The Court could then hold a hearing and grant the relief if appropriate.

A separate Final Judgment in favor of plaintiffs will be entered.

## FINAL JUDGMENT

Upon the Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1. The tax assessments made by defendant's Internal Revenue Service against plaintiffs on April 17, 1989, were in violation of the discharge injunction of 11 U.S.C. §§ 524 and 1141(d)(1); however, no harm having resulted, the assessments shall stand as issued.

2. Defendant's Internal Revenue Service is enjoined from commencing or continuing any further action to assess or collect claims for 1984 and 1985 income taxes from plaintiffs.