In re Ronald DOERGE, Debtor.

Ronald DOERGE, Plaintiff,

v.

UNITED STATES of America, G.T. Global Mutual Funds, Inc., Prudential Life Insurance Company, and Lincoln National Life Insurance Company, Defendants.

Bankruptcy No. 90–40571.
Adv. No. 94–4109.

United States Bankruptcy Court,
S.D. Illinois.

April 18, 1995.

Darrell Dunham, Murphysboro, IL, for Ronald Doerge.

Susan L. Thorner, San Francisco, CA, Pamela Lacey, Benton, IL, for G.T. Global Mut. Funds.

Courtney Cox, Benton, IL, for Lincoln Nat. Life Ins. Co.

Richard J. Gagnon, Washington, DC, for IRS.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

In this action, debtor Ronald Doerge seeks a determination that his federal income tax liabilities for years 1975–1981 were not timely assessed and are, therefore, dischargeable under 11 U.S.C. § 523(a)(1).[1] The debtor additionally seeks a determination of the validity of tax liens filed by defendant, United States of America, for years 1975–1977, as well as a determination of the validity of tax levies for years 1978–1981 upon assets in the possession of defendants, G.T. Global Mutual Funds ("Global"), Prudential Life Insurance Company ("Prudential"), and Lincoln National Life Insurance Company ("Lincoln").[2] The debtor asserts that because the subject taxes were not timely assessed, the liens and levies filed to enforce those taxes are void.

In response, the United States observes that assessments for the tax years in question were made following the conclusion of tax court litigation filed by the debtor to obtain redeterminations of his tax liabilities for those years. The United States asserts that since the debtor failed to raise the issue of timeliness of the assessments in the tax court litigation, this Court is precluded under 11 U.S.C. § 505(a)(2) and the doctrine of *res judicata* from determining the validity of the assessments and the resulting liens. In the alternative, the United States argues that the assessments were timely because the debtor signed consent forms extending the statute of limitations for assessment and that, therefore, the taxes are nondischargeable and enforceable through valid tax liens.

## I. Facts [3]

Prior to filing his Chapter 7 bankruptcy petition on March 30, 1990, the debtor filed petitions in the United States Tax Court to obtain redeterminations of his income tax liabilities for years 1975–1981. The debtor's petition for 1975–1977 taxes was filed on February 22, 1983, after the normal three-year period for assessing taxes had expired. While the United States contends that the debtor signed consent forms extending the time for assessment as to these taxes, it has been unable to produce copies of these consents.

The debtor's tax court petition for 1978–1980 taxes was filed on January 27, 1986,[4] with a postmeter date of January 21, 1986. With regard to these taxes, the debtor executed various forms extending the time for assessment. The debtor's tax court petition for 1981 taxes was filed on December 27, 1988. The United States has been unable to produce copies of any consents executed by the debtor for this year's taxes.

The debtor eventually settled the tax suits by entering into agreed decisions with the

---

1. In his complaint, the debtor also sought a determination of dischargeability as to his 1974 and 1988 tax liability. However, the debtor has subsequently conceded the nondischargeability of his 1988 tax liability, *see* Debtor's Post–Trial Brf., filed Nov. 14, 1994, at 3 n. 19, and the United States has conceded the dischargeability of the debtor's 1974 tax liability, for which no tax lien was filed. *See* United States' Answer, filed April 26, 1994, at 2, ¶ 7.

2. Even though the debtor did not list Prudential and Lincoln as defendants in the caption of his complaint, he seeks relief from them and each was timely served with summons. The debtor additionally requests that these defendants and

Global be enjoined from paying over to the United States any of the monies held by them on account of the debtor for the tax years in question.

3. The parties have stipulated to the facts with the exception of whether the debtor executed certain consent forms to extend time to assess tax.

4. The parties' stipulation of facts erroneously states that the date of the tax court petition for 1978–1980 taxes was January 27, 1983. Stip. of Facts, filed Oct. 17, 1994, at ¶ 22. Exhibit T to the United States' Post–Trial Brief shows the correct filing date of January 27, 1986. *See* U.S. Post–Trial Brf., filed Oct. 26, 1994, at Ex. T.

United States. The agreed decision for years 1975–1977 was entered on January 30, 1989, and the United States assessed the debtor for the amounts found to be due for those years on May 15, 1989. The United States additionally filed notices of tax liens for years 1975–1977 against the debtor's real property in Williamson County, Illinois, on March 29, 1990.

The tax court decision for years 1978–1981 was entered on August 29, 1991, after the United States obtained relief from stay in the debtor's bankruptcy proceeding to continue the tax court litigation. As part of this decision, the debtor agreed to immediate assessment of the tax deficiencies, waiving the statutory prohibition on assessment pending expiration of the 90–day appeal period. The United States subsequently assessed the debtor for the amounts found to be due for years 1978–1980 on November 11, 1991, and for year 1981 on October 28, 1991. The United States additionally served notices of levy on the debtor's assets in the possession of defendants, Global, Prudential, and Lincoln, in an effort to collect the unpaid tax liabilities for years 1978–1981.

## II. Dischargeability of Tax Obligations

Section 523(a)(1)(A) of the Bankruptcy Code excepts from discharge in a Chapter 7 proceeding a debt for taxes "of the kind … specified … in section 507(a)(7) of this title…." 11 U.S.C. § 523(a)(1)(A).[5] Section 507(a)(7) describes tax debts that are entitled to priority of distribution in a bankruptcy case, providing a priority for "a tax on or measured by income or gross receipts—"

[ (A) ] (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, *not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case[.]*

11 U.S.C. § 507(a)(7)(A)(iii) (emphasis added). Under § 523(a)(1)(A), then, to the extent tax debts were not assessed prior to bankruptcy but are still assessable after commencement of the case, they are nondischargeable, priority claims.

There is no question in this case that the debtor's tax liabilities are for taxes "on or measured by income or gross receipts" and are for taxes other than those specified in § 523(a)(1)(B) or § 523(a)(1)(C).[6] Therefore, the dispute regarding the tax debts that had not been assessed prior to the debtor's bankruptcy—that is, the 1978–1981 taxes—lies in whether the taxes were still assessable after the commencement of the debtor's bankruptcy case so as to be nondischargeable as § 507(a)(7) taxes.

With regard to the debtor's taxes that had already been assessed at the time of bankruptcy—the 1975–1977 taxes, the parties agreed subsequent to the filing of the debtor's complaint that the debtor's personal liability for such taxes is dischargeable. *See* U.S. Post–Trial Brf., filed Oct. 26, 1994, at 7, n. 5; Debtor's Post–Trial Brf., filed Nov. 14, 1994, at 1. However, the United States contends that the liens filed to enforce these taxes remain valid because the taxes were timely assessed. The issue regarding the 1975–1977 taxes, therefore, is not whether the taxes are dischargeable but whether they are collectible pursuant to valid liens.

## III. Tax Liability and Assessment

■ Generally, there are two distinct steps in the taxation process: determination of the tax liability and collection of the tax. The liability phase begins when the taxpayer files a tax return. If it is determined that the taxpayer owes more than was reported on the tax return, the government must send the taxpayer a written notice of deficiency, which the taxpayer may challenge by filing a petition for redetermination in the tax court

---

**5.** The Bankruptcy Reform Act of 1994 renumbered § 507(a)(7) as § 507(a)(8) and provided an eighth priority for tax debts. The debtor's complaint was filed in March 1994 before the effective date of the Reform Act in October 1994. The Court will, accordingly, refer to the relevant provision, which was otherwise unchanged in substance, as § 507(a)(7).

**6.** These sections set forth exceptions from discharge for taxes for which a return was never filed or was filed late within two years of bankruptcy, *see* 11 U.S.C. § 523(a)(1)(B), and taxes for which the debtor made a fraudulent return or willfully attempted to evade such tax, *see* 11 U.S.C. § 523(a)(1)(C).

within 90 days.[7] *See* 26 U.S.C. §§ 6212, 6213(a).

■ Absent such a challenge to the amount of the tax liability or other extension of the assessment period, the government must assess the debtor's taxes within three years of the filing of the return. *See* 26 U.S.C. § 6501(a). A tax assessment is the initial step in the collection process. *In re Norris Grain Co.*, 138 B.R. 1004, 1007 (Bankr.M.D.Fla.1992), *aff'd*, 168 B.R. 264 (M.D.Fla.1993), *aff'd* 42 F.3d 643 (11th Cir. 1994); *In re Carter*, 74 B.R. 613, 615 (Bankr. E.D.Pa.1987). The purpose of an assessment is to place the amount of taxes owed by the taxpayer on the government's books. It does not create the tax liability, but merely operates in the nature of a judgment and thus allows for collection of the tax liability. *See Bull v. United States*, 295 U.S. 247, 260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935) ("[t]he assessment is given the force of a judgment, and when the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt"); Rev. Rul. 85–67, 1985–1 C.B. 364.

■ The general three-year period for assessment may be extended by written agreement of the parties. *See* 26 U.S.C. § 6501(c)(4). In addition, the assessment period is suspended during any period in which the government is prohibited from making an assessment and for 60 days thereafter. *See* 26 U.S.C. § 6503(a)(1). Pursuant to 26 U.S.C. § 6213(a), the government is prohibited from assessing a deficiency pending before the tax court. Therefore, the filing of a tax court petition stays all further assessment and collection activity until the tax court decision becomes final. *See* Michael D. Rose & John C. Chommie, *Federal Income Taxation*, § 13.10, at 788 (3d ed. 1988).

■ Once the tax court's decision is rendered, it becomes final upon expiration of the 90–day appeal period. *See* 26 U.S.C. §§ 7481(a)(1), 7483. If no appeal is filed, the government then has 60 days following expiration of the appeal period in which to make the assessment. *See* 26 U.S.C. § 6503(a)(1). Thus, if the statute of limitations for assessment has not expired prior to the filing of a petition in the tax court, the government has a window in which to assess the tax in question which begins 90 days after the date of entry of the tax court decision and ends 150 days after the date of entry of that decision.

■ After the assessment is made, the government must demand payment from the taxpayer, and if no payment is made, a tax lien automatically attaches to all property or rights to property belonging to the taxpayer.[8] *See* 26 U.S.C. §§ 6303, 6321. Assuming the government assessed the taxes within the applicable limitation period, it may then collect the taxes by levy or other court proceeding initiated within ten years. *See* 26 U.S.C. § 6502. However, if the taxes are not timely assessed or if the government fails to initiate such collection proceedings, the tax liability becomes uncollectible as a matter of law. *See* 26 U.S.C. § 6501(a); *In re Harper*, 580 F.2d 165, 168 (5th Cir.1978) (failure by government to timely assess tax results in a bar to further collection proceedings).

### IV. Res Judicata

In this case, the timeliness of the government's assessment of the debtor's tax liabilities is relevant in determining both the validity of the tax liens for 1975–1977 taxes and the dischargeability of the debtor's 1978–1981 tax liabilities. The United States asserts that all the subject taxes were timely assessed as measured from the dates of entry of the tax court decisions out of which the assessments arose. The debtor argues, however, that the time for assessing each year's taxes had expired prior to the filing of his tax court petitions so that the government's assessments, made after entry of the tax court decisions, were untimely.

The United States responds that the debtor is precluded under § 505(a)(2)(A) and the

---

7. The taxpayer may also challenge the tax liability in U.S. District Court or Court of Claims. However, the taxpayer may petition these courts only after paying the full amount of the deficiency.

8. While the tax lien arises automatically, notice of the tax lien must be filed to make the lien effective against purchasers and third party lien creditors. *See* 26 U.S.C. § 6323(a).

364

doctrine of *res judicata* from litigating the issue of timeliness of the assessments because expiration of the statute of limitations for assessment could have been raised as a defense in the tax court proceedings. Section 505(a)(1) grants the bankruptcy court authority to determine the amount or legality of a debtor's tax liability except as provided in § 505(a)(2), which states in pertinent part:

(2) The court may not so determine—

(A) the amount or legality of a tax ... if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title[.]

11 U.S.C. § 505(a)(2)(A).

 Section 505(a)(2)(A) expresses in jurisdictional terms the traditional principles of *res judicata* or claim preclusion. *See In re Teal*, 16 F.3d 619, 621 n. 3 (5th Cir.1994). The doctrine of *res judicata* ensures the finality of decisions by barring litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *See Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). In the context of tax determinations, any particular income tax year creates a single claim or "cause of action." *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948). Thus, if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. *Id.*

 In this case, § 505(a)(2)(A), by its terms, applies only to the debtor's tax liabilities for 1975–1977, which were adjudicated by the tax court prior to the debtor's bankruptcy filing. With regard to the 1978–1981 taxes for which the tax court proceedings

were pending at the commencement of the debtor's bankruptcy case, this Court lifted the automatic stay to allow the tax court to determine the debtor's tax liabilities, *see* 11 U.S.C. § 362(a)(8), and is bound by that court's subsequent decision as it affects the extent of the tax claims against the estate. *See* 3 *Collier on Bankruptcy,* ¶ 505.03, at 505–19 to 505–20 (15th ed. 1994) (where a tax court proceeding is pending at the commencement of a bankruptcy case and stay is lifted on the tax court, the tax court's subsequent determination of tax liability binds the bankruptcy court under the doctrine of *res judicata* ); *see also* 2B Bkr L–Ed, *Code Commentary and Analysis* § 21:69, at 207–208 (1988). For both the debtor's 1975–1977 and 1978–1981 taxes, then, this Court is precluded from inquiring into the timeliness of the government's assessment as it bears on the amount and legality of the tax liabilities determined by the tax court.

 It does not follow, however, that the debtor's present action to determine the dischargeability of the 1978–1981 taxes is barred. While the debtor's claim of dischargeability of these tax obligations under § 523(a)(1)(A) and § 507(a)(7)(A)(iii), like a determination of their legality, necessarily involves consideration of the time limitations for assessing taxes, the debtor's "claim" or cause of action in this proceeding is the dischargeability of these tax obligations, not their legality. Legality does not predispose dischargeability, as nearly all debts ultimately discharged in bankruptcy are legal debts. Rather, the dischargeability of an obligation in bankruptcy involves a new claim or cause of action that is not foreclosed by a previous determination of the legality of the obligation. *See In re Graham*, 94 B.R. 386, 391 (Bankr.E.D.Pa.1988) ("[a]lthough the judgment in the prior nonbankruptcy forum established the existence of the debt, the judgment cannot by a process of claim preclusion make the debt nondischargeable").[9]

9. Both *Graham* and *Brown v. Felsen*, relied upon by *Graham*, involved dischargeability claims of the type described in § 523(a)(2), (4) and (6), as to which the bankruptcy court has exclusive jurisdiction. *See* 11 U.S.C. § 523(c). With regard to dischargeability claims such as the present claim under § 523(a)(1), the bankruptcy court shares concurrent jurisdiction with other courts. *See In re Canganelli*, 132 B.R. 369, 385 n. 3 (Bankr.N.D.Ind.1991). Nevertheless, a determination of the validity, extent, or amount of such an underlying claim in a nonbankruptcy forum does not preclude exercise of this Court's jurisdiction in deciding whether the debt is nondis-

■ In the debtor's bankruptcy case, the government sought and obtained relief from stay to allow the tax court to enter agreed decisions regarding the "correctness of the notices of deficiency"—that is, the amount and legality—of the debtor's 1978–1981 tax liabilities. *See* Mot. for Rel. from Stay, filed May 2, 1991, at 2, ¶ 6; Minute Order, July 30, 1991. While, at that time, the debtor had filed for bankruptcy relief, giving rise to a claim of dischargeability as to these obligations, the Court lifted stay for the limited purpose of allowing the tax court to determine the extent of the debtor's tax liabilities. Stay was not lifted for a determination of the dischargeability of those taxes in bankruptcy. The debtor, therefore, could not have asserted a claim of dischargeability of those obligations based on the government's failure to timely assess the taxes prior to the filing of the tax court petitions. Since *res judicata* bars only claims that were or could have been raised in an earlier proceeding, it does not apply to preclude this Court's present determination of dischargeability of the debtor's 1978–1981 tax obligations under § 523(a)(1)(A) and § 507(a)(7)(A)(iii).

### V. Validity of Tax Liens— 1975–1977 Taxes

■ As indicated, the debtor does not argue that his 1975–1977 taxes are dischargeable, as the United States has conceded the dischargeability of the tax liabilities for these years.[10] The debtor, rather, seeks a determination that the tax liens filed to enforce these liabilities are void because the government failed to timely assess the taxes. Specifically, the debtor contends that the three-year period for assessment following the filing of his returns for these years had expired

before he filed his tax court petition challenging the government's notices of deficiency. Thus, he contends, the government was barred from assessing these taxes following the tax court's decision, and the resulting tax liens, which arose by operation of law following such assessment, are void and cannot be enforced against his property *in rem.*[11]

■ If a tax is assessed illegally, any purported lien arising out of the assessment is invalid. *See* 26 U.S.C. § 6501(a); *In re Harper,* 580 F.2d at 168. The debtor here filed timely returns for tax years 1975, 1976, and 1977, and the normal three-year period for assessing these taxes expired in April 1979, 1980, and 1981, respectively. These taxes had not been assessed when the debtor filed his tax court petition for years 1975–1977 on February 22, 1983. While the government contends that the assessment period had been extended by consent forms signed by the debtor prior to his tax court petition, it has been unable to produce copies of these consents. The debtor asserts, therefore, that the limitations period for assessing these taxes had expired at the time he filed his tax court petition and that the subsequent assessments, made on May 30, 1989, following the tax court decision, were untimely.

The government, lacking actual copies of the consent forms, relies on litigation "check lists" prepared by its counsel in the tax court case to prove that the debtor executed such forms.[12] The Court, however, finds it unnecessary to consider whether the government has met its burden of proving that the debtor executed the requisite consents. *See United States v. McGaughey,* 977 F.2d 1067, 1071 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct.

chargeable under § 523(a)(1). *Id.; see also In re Comer,* 723 F.2d 737, 740 (9th Cir.1984).

10. The debtor's 1975–1977 tax liabilities, unlike his 1978–1981 tax liabilities, were assessed before commencement of the debtor's bankruptcy case. Thus, it could not be contended that these obligations were for taxes "not assessed before but still assessable" after commencement of the case so as to be priority, nondischargeable claims within the meaning of § 507(a)(7)(A)(iii).

11. A discharge in bankruptcy only relieves a debtor of personal liability for his obligations, *see*

11 U.S.C. § 524(a)(2), and does not automatically invalidate liens securing such dischargeable debts. Rather, these liens continue beyond bankruptcy as a charge upon the debtor's property if not disallowed or avoided. *In re Leavell,* 124 B.R. 535, 549 (Bankr.S.D.Ill.1991); *see also In re Isom,* 901 F.2d 744, 746 (9th Cir. BAP 1990); *In re Dillard,* 118 B.R. 89, 92 (Bankr.N.D.Ill.1990).

12. These documents, entitled "New Tax Court Deficiency Check Lists," indicate that there were no statute of limitations problems for the years in question.

1817, 123 L.Ed.2d 447 (1993) (burden of proof concerning waivers of statutes of limitation in tax collection matters lies with government). In challenging the validity of the tax liens for 1975–1977, the debtor is essentially challenging the legality of the tax liabilities themselves. These tax liabilities, including their amount and legality, were previously determined in the tax court proceeding, and the debtor could have asserted a statute of limitations defense in that proceeding to defeat the government's claim of liability. Having failed to do so, the debtor cannot now seek to defeat the tax liens filed to enforce these liabilities by raising a defense that was available to him in the previous proceeding.

█ Section 505(a)(2)(A) and the doctrine of *res judicata* preclude this Court from re-determining the 1975–1977 tax liabilities that were determined in the tax court proceeding. Since the debtor cannot question the legality of these taxes based on expiration of the limitations period prior to the tax court proceeding, he is likewise precluded from questioning the validity of the tax liens that arose from the government's timely assessment following entry of the tax court decision.[13] Accordingly, even though the tax liabilities themselves are dischargeable in bankruptcy, the resulting tax liens are valid and enforceable against the debtor's property *in rem*.

### VI. Dischargeability

#### A. 1978–1980 Taxes

As discussed above, neither § 505(a)(2)(A) or the doctrine of *res judicata* apply to bar the debtor's claim of dischargeability of his tax liabilities since the issue of dischargeability could not have been raised in the previous tax court proceeding. With regard to his 1978–1980 tax liabilities, the debtor asserts that the limitations period for assessment had expired before he filed his tax court petition and that the government was, therefore, barred by expiration of the statute of limitations from assessing these taxes following the tax court's decision. The government

responds, however, that the limitations period for assessment had been extended by consent forms executed by the debtor and that the time for assessing these taxes had not expired by the time the debtor filed his tax court petition, which stayed the running of the limitations period. Therefore, the government argues, these taxes, which had not been assessed at the time the debtor filed his bankruptcy case, were still "assessable" after commencement of his bankruptcy case so as to be nondischargeable within meaning of § 507(a)(7)(A)(iii) and § 523(a)(1)(A).

The debtor filed his tax returns for 1978, 1979, and 1980 in April 1979, July 1980, and June 1981, respectively. While the government would normally be required to assess these tax liabilities within three years of the return date, the debtor signed several consent forms agreeing to extend the statute of limitations for assessment, including a "Special Consent to Extend the Time to Assess Tax," known as Form 872–A. Form 872–A extends the assessment period until either the debtor or the government issues a request to terminate the consent or, as occurred in this case, until "the 90th day after … the [government] mails a notice of deficiency for such period(s)…."

█ The government mailed notices of deficiency for the debtor's 1978–1980 taxes on October 23, 1985. Pursuant to Form 872–A, the government had 90 days, or until January 21, 1986, in which to assess the debtor's tax liabilities. However, the debtor's tax court petition, if filed before expiration of that period, would have stayed the running of the limitations period for assessment. The debtor's tax court petition for 1978–1980 taxes was stamped "filed" on January 27, 1986, but it bore a postmeter date of January 21, 1986. Under 26 U.S.C. § 7502(a), a document required to be filed within a prescribed period is deemed to be filed on the date of its postmark. Therefore, the debtor's tax court petition was filed on January 21, 1986, and thus stayed the running of the limitations period for assessment

**13.** There is no dispute that these taxes were

timely assessed following entry of the tax court

until after the debtor's bankruptcy filing.[14]

■ The Court finds that because the debtor executed Form 872-A extending the time for assessment, the limitations period for assessing the debtor's 1978–1980 taxes had not expired at the time he filed his tax court petition. The filing of the tax court petition stayed any assessment and thus extended the limitations period further until after the debtor filed his bankruptcy petition. At the time the debtor filed his bankruptcy case, then, the debtor's 1978–1980 tax liabilities had not been assessed but were still "assessable" and constitute nondischargeable, priority taxes pursuant to § 523(a)(1)(A) and § 507(a)(7)(A)(iii).

### B. 1981 Taxes

The debtor filed his tax return for 1981 taxes on July 2, 1982. With regard to this year's tax liability, the government has been unable to produce any consent forms extending the limitations period for assessment. In the absence of such consents, the assessment period would have expired on July 2, 1985. The debtor filed his tax court petition for 1981 taxes on December 23, 1988, and the taxes were not assessed until the tax court decision was entered following the debtor's bankruptcy filing.

Again, the debtor maintains that his tax liability is dischargeable because the limitations period had expired prior to the filing of his tax court petition and the tax was thus not "assessable" at the commencement of his bankruptcy case. The government argues, however, that the debtor was required under tax court procedure to affirmatively plead any statute of limitations defense he might have had in the tax court case and that his failure to do so constitutes a waiver of the issue of expiration of the limitations period

prior to the filing of his tax court petition. The government asserts that since the debtor did not raise the statute of limitations issue in the tax court proceeding, the filing of the tax court petition stayed the running of the limitations period and the debtor, therefore, may not now question the timeliness of its assessment, which was made following the tax court decision in which the debtor agreed to immediate assessment of the tax.

■ The government's argument invokes the equitable doctrines of waiver and estoppel and further raises the issue of whether the debtor is precluded from taking inconsistent positions in litigation, a doctrine known as judicial estoppel.[15] *See generally Levinson v. United States,* 969 F.2d 260, 264–65 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992); 18 Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4477 (1981) (hereinafter "Wright, *Federal Practice*"). Waiver is the intentional relinquishment of a known right, either expressly or by conduct that is inconsistent with enforcement of the right, whereas estoppel arises when a party's conduct misleads another into believing that a right will not be enforced and causes the other party to act to its detriment in reliance on this belief. *See Hystro Products, Inc. v. MNP Corp.,* 18 F.3d 1384, 1393 (7th Cir.1994); *J.H. Cohn & Co. v. American Appraisal Assocs., Inc.,* 628 F.2d 994, 1000 (7th Cir.1980). Judicial estoppel, designed to preserve the integrity of the courts, prevents a party that has taken a position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so. *Levinson,* 969 F.2d at 264–65. This doctrine is similarly based on the premise that a party who has induced another to act in a particular manner may not be permitted

decision within the applicable 150–day period.

14. The debtor filed his bankruptcy petition on March 30, 1990, and the tax court entered its decision on August 29, 1991, after relief from stay had been granted in the bankruptcy case. The government then assessed the debtor's 1978–1980 taxes on November 11, 1991, within the applicable period for assessment following the tax court's decision.

15. As previously discussed, *res judicata* does not bar the debtor's present dischargeability action because dischargeability is a different claim or cause of action than that determined in the tax court proceeding. Similarly, the doctrine of collateral estoppel or issue preclusion, which bars the relitigation of an issue "actually litigated" in an earlier proceeding, is not applicable because the statute of limitations issue was not raised in the tax court proceeding and, thus, could not have been "actually litigated."

to adopt an inconsistent position if the other party has changed its position in reliance. *See Colonial Refrigerated Transp., Inc. v. Mitchell*, 403 F.2d 541, 550 (5th Cir.1968); *see also Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir.1980). All of these doctrines are equitable in nature, and, although they are not reducible to a pat formula, their concern is to avoid unfair results and unseemly conduct. *See* Wright, *Federal Practice*, § 4477, at 779.

▮ In this case, if the statute of limitations for assessing the debtor's 1981 tax had expired prior to the filing of his tax court petition, he was required, pursuant to Tax Court Rule 39, to affirmatively raise this fact in his pleadings. Rule 39 states:

> A party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the *statute of limitations*.

> . . . . .

Tax Ct.R. 39 (emphasis added). The debtor did not include any statute of limitations defense in his tax court petition. Under Tax Court Rule 34(b)(4), the failure to include this contention of error in his petition constituted a waiver for purposes of the tax court litigation. Tax Ct.R. 34(b)(4); *see Shedd's Estate v. Commissioner*, 320 F.2d 638, 640 (9th Cir.1963); *Given v. Commissioner*, 238 F.2d 579, 583 (8th Cir.1956).[16] Since the debtor did not raise this defense, it appears that he intended to waive the issue of expiration of the statute of limitations and, therefore, foreclose it from further litigation.

The Court finds support for this conclusion in the stipulation entered into by the debtor in the tax court litigation. The agreed decision determining the debtor's 1981 taxes contained a stipulation in which the debtor agreed to waive the statutory restrictions that prohibited assessment and collection of the tax deficiency until the decision had become final. In so stipulating, the debtor essentially agreed to the immediate assessment of his 1981 tax liability upon entry of the tax court decision. It seems likely from this stipulation that the debtor did not intend to challenge the assessability of his 1981 tax liability and that he, therefore, intentionally relinquished the right to raise any statute of limitations defense regarding this tax. On this basis, it could be said that the debtor waived his right to assert his statute of limitations defense under the equitable doctrine of waiver.

Even assuming the debtor was unaware he had a potential statute of limitations defense in the tax court proceeding so that waiver was inapplicable, at the very least the debtor's stipulation would reasonably have led the government to believe the taxes were still assessable. The government did, in fact, act in reliance on this representation and proceeded to assess the taxes and to levy upon the debtor's assets. Having induced such reliance in the prior tax court proceeding, the debtor now seeks to assert the statute of limitations defense in the present bankruptcy proceeding in order to escape payment of his tax liability. The debtor's delay in asserting this defense has arguably resulted in prejudice to the government because the government is no longer able to produce the consent forms it contends the debtor executed extending the time period for assessment. The debtor's position in this later proceeding is clearly inconsistent with his position in the earlier tax court litigation, which involved the same facts.[17] Based on these factors, the Court concludes that the equitable doctrine

---

16. The opinions in *Shedd's Estate* and *Given*, while standing for the proposition stated, do not specifically reference Tax Court Rule 34(b)(4). For a more recent case that cites to Rules 39 and 34(b)(4), see *Matheson v. Commissioner*, No. 91–70634, 1993 WL 169070, at * 1 (9th Cir. May 19, 1993), an opinion not submitted for publication pursuant to Ninth Circuit Rule 36–3.

17. In *Levinson*, the Seventh Circuit set forth certain boundaries for judicial estoppel to apply: the litigant's later position must be clearly inconsistent with his earlier position, the facts at issue must be the same in both cases, and the party to be estopped must have been successful in convincing the court of his position in the earlier proceeding. 969 F.2d at 264–65. The last requirement is not technically met in this case even though the tax court's decision incorporated the debtor's stipulation agreeing to immediate assessment, because the debtor could not have convinced the court of a position he did not raise.

of estoppel precludes the debtor from changing his position in this action to defeat the government's claim of nondischargeability of the 1981 taxes. The Court finds, accordingly, that the debtor's 1981 tax liability was still assessable at the time he commenced his bankruptcy case and is thus nondischargeable as a priority tax under § 523(a)(1)(A) and § 507(a)(7)(A)(iii).

### VII. Conclusion

Based on this Court's ruling that the debtor's taxes for 1978–1981 are nondischargeable, the tax levies upon the debtor's assets in the possession of defendants, Global, Prudential, and Lincoln are valid and enforceable. The Court further finds that the debtor's 1975–1977 taxes, while dischargeable, are enforceable pursuant to valid tax liens on the debtor's property. The Court, accordingly, will enter judgment for the United States and against the debtor on his complaint to determine the dischargeability and enforceability of his 1975–1981 tax obligations.

SEE WRITTEN ORDER.