**In re Clayton BAKER; Sally I. Baker, Debtors.**

**Clayton BAKER; Sally I. Baker, Petitioners–Appellants,**

v.

**INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 94–35803.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 1995.

Decided Jan. 12, 1996.

William P. Koontz, Cottage Grove, Oregon, for petitioners-appellants.

Roger E. Cole, United States Department of Justice, Tax Division, Washington, DC, for respondent-appellee.

Before: BROWNING, RYMER, and NELSON, Circuit Judges.

## OPINION

PER CURIAM:

Appellants Clayton and Sally Baker appeal from the rejection of their attempt to overturn a stipulated judgment entered against them by the United States Tax Court. We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291, and affirm.

### I.

The Bakers' tax problems began in late 1978 or early 1979, when they invested $30,-000 in tax shelters promoted by Maxwell Berg and the Los Angeles law firm of Berg & Allen. Details about the tax shelters, which the IRS eventually disallowed as shams, are sketchy.[1] Both parties agree, however, that Berg filed amended returns on behalf of the Bakers, using the shelters to claim deductions and credits for the tax years 1975 through 1980. The resulting refund checks were sent directly to Berg, who negotiated them and, according to the Bakers, kept the money for himself. The Bakers deny authorizing Berg to file the amended returns, or receiving any proceeds of the refund checks. They claim to have discover-

---

1. Some of the events surrounding the Berg & Allen tax shelters are discussed in a related Tax Court case. *See Abeson v. Commissioner,* 59 T.C.M. *(CCH)* 391, 1990 WL 40955 (1990), *aff'd sub nom. Rivera v. Commissioner,* 959 F.2d 241 (9th Cir.1992) (table).

ed Berg's fraudulent activities only in 1981 or 1982, when the IRS issued notices of deficiency to investors in the Berg & Allen tax shelters.

The Bakers petitioned the Tax Court for review of the IRS decision in May 1983, arguing that the statute of limitations barred the IRS from assessing additional taxes for the tax years 1975 through 1978. Proceedings before the Tax Court moved slowly. The Bakers' petition was one of more than 300 filed in response to the notices of deficiency, and the litigants lacked access to Berg & Allen's records, which had been seized in connection with a grand jury investigation in 1981, and to Berg himself, who had fled the country.

In 1988, five years after the Bakers filed their Tax Court petition, the Tax Court litigants finally obtained limited access to the documents seized by the grand jury. Two years later, the Tax Court tried six "test cases," upholding the notices of deficiency and refusing to allow the investors a credit based on the refunds Berg had allegedly pocketed. *See Abeson v. Commissioner*, 59 T.C.M. (CCH) 391, 1990 WL 40955 (1990), *aff'd sub nom. Rivera v. Commissioner*, 959 F.2d 241 (9th Cir.1992) (table).

After the test cases were decided, the IRS made a settlement offer to some of the Tax Court petitioners, including the Bakers. Under the terms of the offer, the taxpayers would get "credits" equal to half of the amount they had invested with Berg; in the Bakers' case the IRS calculated the credit at $15,000. This credit would be applied to the taxpayer's deficiency, beginning with the oldest years, until it was exhausted.[2] Settlement papers, in the form of a stipulated Tax Court judgment reflecting the application of the credit, were forwarded to the Bakers by their lawyer in March 1991.[3]

Accompanying the stipulation was a letter, written by the Bakers' lawyer, which contained the following explanation:

> The settlement documents reflect a reduction in the gross amount of taxes claimed by the IRS equal to half of the size of your projected "investment" with Mr. Berg.... This reduction was applied to the oldest years first, until exhausted.
>
> Once the documents are filed with the Court, it can be expected that a bill for all the unpaid taxes plus accrued interest will be generated by the Internal Revenue Service within about three to four months. There is no requirement that the bills be paid immediately, but interest will continue to accrue until they are paid....

Neither the letter nor the accompanying stipulation provided the Bakers with a dollar figure representing their total liability for taxes and accrued interest as of the settlement date.[4]

The Bakers did not discuss the stipulation with their lawyer before they signed it on March 22, 1991. They claim that because the stipulation showed no taxes due for 1975 and 1976, they assumed the Tax Court had accepted their statute of limitations defense for those years. Despite their lawyer's explanation that the stipulation reflected the credit offered by the IRS, the Bakers believed the

---

**2.** An internal IRS memorandum, which was not provided to the Bakers or their lawyer at the time of settlement, indicates the IRS did not consider the Bakers' statute of limitations defense when it calculated and applied their credit. According to the memorandum, the credit was applied as follows:

| Year | Deficiency | Credit applied | Credit carryover |
|------|-----------|---------------|-----------------|
| 1975 | $4,402.00 | $4,402.00 | $10,598.00 |
| 1976 | $5,623.00 | $5,623.00 | $ 4,975.00 |
| 1977 | $5,813.00 | $4,975.00 | zero |

**3.** The stipulation set out the Bakers' remaining liability for income tax and additions to tax as follows:

| Year | Income tax | Additions to tax, I.R.C. § 6651(a) |
|------|-----------|-----------------------------------|
| 1975 | none | none |
| 1976 | none | none |
| 1977 | $   838.00 | none |
| 1978 | $15,695.00 | $   835.00 |
| 1979 | $14,905.17 | $   629.55 |
| 1980 | $25,207.61 | $1,108.00 |

**4.** The stipulation reflected tax deficiencies of $56,645.78 and additions to tax of $2,572.55; the only reference to interest was a statement that by signing the stipulation, the Bakers waived "the restrictions ... prohibiting assessment and collection of any deficiency in tax ... plus statutory interest, until the decision of the Tax Court has become final."

credit would be applied later, further reducing their liability. And despite the letter's warning that interest would "continue to accrue," they assumed interest would accrue only from the date of the stipulation forward. As a result of these assumptions, the Bakers expected that signing the stipulation would allow them to resolve their tax problems for approximately $45,000.

The Tax Court entered the stipulated decision on April 10, 1991, and neither party appealed. In 1993, the Bakers received a tax bill for approximately $175,000, most of it interest that had been accruing since the late 1970s. The Bakers did not return to Tax Court. Instead, they filed a joint voluntary petition under Chapter 13 of the Bankruptcy Code. The IRS filed a proof of claim for $174,182.63 to which the Bakers objected. The Bankruptcy Court overruled the objection, holding that it lacked jurisdiction to readjudicate the Bakers' tax liability. On appeal, the district court affirmed. This appeal followed.

## II.

The Bakers contend the Bankruptcy Court erred in refusing to readjudicate their tax liability. We disagree.

### A.

Ordinarily a bankruptcy court can determine the amount and validity of a debtor's taxes, 11 U.S.C. § 505(a)(1), but this power is limited by 11 U.S.C. § 505(a)(2)(A), which bars bankruptcy courts from determining "the amount or legality of a tax ... if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction" before commencement of the bankruptcy proceeding.

The Bakers argue § 505(a)(2)(A) does not apply to their case because the "amount or legality" of their tax was not "contested" and

"adjudicated" in the Tax Court within the meaning of the statute.[5] Neither argument is persuasive.

On its face, the Tax Court judgment establishes the *amount* of tax owed, and we agree with the Fifth Circuit's conclusion that an assessment of the amount owed "presupposes the legality of that assessment." *IRS v. Teal (Matter of Teal)*, 16 F.3d 619, 621 (5th Cir.1994). Nor are we persuaded by the Bakers' contention that the claims were not "contested" and "adjudicated" within the meaning of the statute. According to § 505(a)(2)'s legislative history, a proceeding is contested if, prior to the bankruptcy filing, the debtor had filed a petition in the Tax Court and the IRS had filed an answer. *See* 124 Cong.Rec. 32250, 32413 (Sept. 28, 1978) (statement of Rep. Edwards).[6] This definition has been adopted by the few courts that have considered the issue, and we see no reason to depart from it. *See Matter of Teal*, 16 F.3d at 621 n. 4; *Richcreek v. IRS*, 1988 WL 81527, at *3 (S.D.Ind., Mar. 22, 1988). The Tax Court "adjudicated" the Bakers' tax liability when it entered judgment against them. A matter is adjudicated "when a 'judgment of a court of competent jurisdiction' has been decreed." *Matter of Teal*, 16 F.3d at 621 (quoting Black's Law Dictionary 42 (6th ed. 1990)). The Bakers argue a stipulated judgment is not an adjudication because it is not a decision "reached based upon evidence presented to the court." We decline to adopt this view. If the statute were read as the Bakers suggest, the IRS would be forced to fully litigate all Tax Court cases to foreclose petitioners from relitigating their tax liability in bankruptcy court. Section 505(a)(2)(A)'s legislative history makes it clear that no such result is required. A case not tried on the merits can nonetheless be "adjudicated" within the meaning of the statute. *See* 124 Cong.Rec. 32250, 32413 (Sept. 28, 1978) (statement of Rep. Edwards) (provided a petition and answer were filed in Tax Court, a subsequent default judgment bars bankruptcy courts from relitigating the

---

5. It is undisputed that the Tax Court is a court of competent jurisdiction and that proceedings in the Tax Court ended before the Bakers filed for bankruptcy.

6. The statement of Rep. Edwards, the House sponsor of the Bankruptcy Reform Act of 1978,

was issued in lieu of a conference committee report and constitutes persuasive evidence of Congress's intent. *Begier v. IRS*, 496 U.S. 53, 64 n. 5, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).

debtor's tax liability). Because the Bakers' tax liability was contested before and adjudicated by a court of competent jurisdiction, § 505(a)(2)(A) applies.

▮ We also reject the Bakers' argument that, even if § 505(a)(2)(A) applies, the statute should not preclude a court from granting equitable relief under Fed.R.Civ.P. 60(b).[7] Section 505(a)(2)(A) is a jurisdictional statute that deprives bankruptcy courts of authority to decide a category of claims. *Matter of Teal*, 16 F.3d at 622. By enacting a statute that is jurisdictional in nature, "Congress did not leave bankruptcy courts the discretion to disregard tax court adjudications and concomitantly seize jurisdiction out of equitable concerns." *Id.* Although the Bakers' situation is unfortunate, they may not use Rule 60(b) to override the Bankruptcy Court's jurisdictional limitations.

### B.

▮ The lower courts' holdings are also supported by the doctrine of res judicata.[8] Under this doctrine, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981). In the tax context, once a taxpayer's liability for a particular year is litigated, "a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year." *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948). For res judicata purposes, an agreed or stipulated judgment is a judgment on the merits. *See United States v. International Bldg. Co.*, 345 U.S. 502, 505–06, 73 S.Ct. 807, 808–09, 97 L.Ed. 1182, *reh'g denied*, 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1392 (1953); *Lawrence v. Steinford Holding B.V. (In re Dominelli)*, 820 F.2d 313, 316–17 (9th Cir.1987).

The Bakers' liability for the years in question was litigated before the Tax Court, and the Tax Court issued its final judgment before the Bankruptcy Court proceedings began. *See* I.R.C. §§ 7483, 7481(a). The Bankruptcy Court proceeding involved the same parties, and the issue the Bakers sought to raise—their statute of limitations defense—had been litigated before the Tax Court. Res judicata barred the Bankruptcy Court from revisiting the Tax Court's decision.

### III.

Because its jurisdiction was limited by 11 U.S.C. § 505(a)(2)(A) and the doctrine of res judicata, the Bankruptcy Court could not redetermine the Bakers' tax liability as established by the stipulated Tax Court decision.

AFFIRMED.

---

7. Although the Bakers never filed a Rule 60(b) motion, they objected to the IRS proof of claim on the ground that they were entitled to relief under Rule 60(b). Neither the Bankruptcy Court nor the District Court addressed the availability of relief under Rule 60(b), and because of our jurisdictional holding, we decline to do so as well.

8. We agree with the Fifth Circuit's statement that res judicata is "closely related, if not identical" to issues regarding the Bankruptcy Court's authority under Section 505. *See Matter of Teal*, 16 F.3d at 621 n. 3. Section 505(a)(2)(A) "expresses in jurisdictional terms the traditional principles of res judicata or claim preclusion." *Doerge v. United States (In re Doerge)*, 181 B.R. 358, 364 (Bankr.S.D.Ill.1995).