**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gene M. AUSTON, IV, Captain Defendant–Appellant.**

No. 01–1576.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 2001.

Decided April 11, 2002.

Before BAUER, COFFEY, DIANE P. WOOD, Circuit Judges.

## ORDER

For many years, Captain Gene Auston and the United States have been wrestling with the problem of certain federal income taxes that Auston owed for tax year 1992. The present matter arose when the United States sued Auston to recover a refund of federal income taxes for that year that the government claimed had been issued in error. Auston resisted its claim because

he believed that the government owed him tax refunds for several years including 1992, and he thought the government should apply the erroneous refund to the total amount it owed him. The district court held a bench trial, found for the government, and ordered Auston to return the refund. While we understand Auston's frustration with the entire process, we conclude that the district court correctly analyzed the facts and the law in this case and we therefore affirm.

I

In order to understand the present proceedings, it is necessary to look back to a prior action that Auston filed in the United States Tax Court. In October 1994, the Internal Revenue Service issued Auston a notice of deficiency stating that he owed federal income taxes in the amount of $19,464 (plus penalties and interest) for tax year 1992. Auston appealed that determination to the Tax Court. While his case was pending before the court, the IRS made a formal assessment against him for the amounts specified in the deficiency notice, and it also applied three withholding credits to his account. Later, the IRS realized that it had jumped the gun because the Tax Court had not yet rendered a final judgment fixing Auston's tax liability for 1992. It accordingly abated the premature assessment, but it did not at that time reverse the three credits it had applied to his taxes. In April 1996 the Tax Court entered a decision reflecting an agreement between the parties, according to which Auston would pay $10,403 plus penalties and interest for 1992. The comedy of errors continued, however: shortly before it processed this corrected assessment, the IRS mistakenly issued a refund to Auston in the amount of $9,276, which represented the three credits. Auston cashed the check and refused, even after the Tax Court ruling became final, to repay the erroneous refund.

The United States instituted the present case in 1998 with a complaint against Auston seeking repayment of the $9,276 refund. In his answer, Auston admitted that he had stipulated to the 1996 Tax Court decision governing his 1992 tax liability; that the IRS had made an assessment against him in accordance with that judgment; and that the IRS issued him a refund check of $9,276. Notwithstanding these facts, Auston filed a motion to dismiss, asserting that the two-year statute of limitations for filing an erroneous refund suit had lapsed by the time of the government's 1998 complaint. The district court denied that motion and set a trial date of February 13, 2001.

In December 2000, Auston (proceeding *pro se*) served a "Notice of Depositions" on the government, citing Fed.R.Civ.P. 31 and naming five individuals whom he wished to depose. He also served a request for production of documents on the government, seeking all records pertaining to himself, his wife, and his family members, as a list of all governmental personnel who had ever had contact with these records and persons. In response, government counsel sent Auston two letters asserting that his requests were not properly made under the Federal Rules of Civil Procedure and that the IRS thus was not obliged to comply with them. Counsel told Auston that, in order to compel a witness to testify by deposition, the witness must be subpoenaed under Fed.R.Civ.P. 45, or alternatively "describe with reasonable particularity the matters on which examination is requested" so that counsel could designate appropriate witnesses.

Auston responded with a motion to compel the government to comply with his discovery requests. The government objected on the grounds that the documents

he sought were either privileged, pertained to persons who were not parties to the suit, or included tax years beyond the one at issue here. Although the government agreed that it would produce all responsive documents not covered by these objections, it did not produce any documents before trial. The motion to compel fell by the wayside; the district court never ruled on it and never explained why it did not.

At the trial, the government introduced the 1996 Tax Court decision and a transcript of Auston's 1992 IRS account. It called one witness, IRS agent Robert Der Avidesian, to explain the entries on the transcript. In his defense, Auston testified that he was exempt from filing tax returns from 1988 through 1993 because he was on active military duty in the Middle East in connection with the Desert Shield/Desert Storm operation, and consequently he was entitled to delay filing his returns. He also testified that the government had prepared substitute tax returns for the years 1989 through 1992 and had frozen his tax refunds for those years—actions which he described as "illegal." He claimed that the IRS still owed him refunds as a result of these actions for taxes he paid between 1989 and 1992, which he estimated to be about $16,000, and that it would owe him approximately $27,000 if he returned the erroneous refund. Other than his own testimony, Auston presented no evidence that the government actually owed him any money or that he had filed claims for the allegedly frozen refunds.

The district court took judicial notice of the 1996 Tax Court decision fixing Auston's 1992 tax liability at $10,403 plus penalties and interest. The court also made it clear that the issues at trial were limited to tax year 1992; therefore, Auston's claims that the government owed him refunds for years other than 1992

were irrelevant. Based on the Tax Court's decision, the court concluded that Auston did, in fact, owe money for his 1992 taxes and that the refund check for 1992 had been issued in error. On February 13, 2001, the court ruled in favor of the government and entered judgment against Auston in the amount of $9,269 (a slightly corrected, and slightly lower, figure, which the district court permitted the government to use).

II

■ Auston has presented a number of arguments for our consideration, but none of them can overcome a few basic facts. First, the Tax Court's 1996 decision represents a final judgment with respect to his 1992 tax liability, and he is not free to relitigate that issue here. Second, as the district court correctly noted, the only tax year at issue in this case is 1992. We express no opinion here about Auston's ability to contest the taxes he paid or to claim refunds for any other tax year, except to say that he would have to pursue such claims in proceedings directed to those years. Whether that avenue remains open to him after the passage of so much time we do not know. Unless or until he files a proper claim for a refund with the IRS and makes whatever tolling arguments he may need to make, it would be pure speculation on our part to consider these points. What is clear is that he owes money for tax year 1992 and that, by hanging on to the erroneous refund check, he has not paid that money. (The record makes it clear that he did not pay the $10,403 in any other way.) The only question is whether there is something unusual about the $9,269 that would entitle him to keep it in the face of these facts.

Auston's principal contention on appeal is that the government violated his "substantive due process rights" by taxing him

for 1992 and withholding tax refunds for other years. But this argument is a non-starter. What he is really saying is that the district court erred by taking judicial notice of the 1996 Tax Court decision and limiting the issues at trial to tax year 1992. Yet what else could the court have done? Auston has offered us no legal principle under which taxpayers are entitled to re-litigate tax claims every time they refuse to pay judicially determined amounts, nor can we imagine one. To the contrary, the Tax Court's decision was *res judicata* on the matter. See *Baker v. I.R.S.*, 74 F.3d 906, 910 (9th Cir.1996).

Had Auston disagreed with the Tax Court's assessment of his 1992 liability, the proper route to have taken would have been to appeal to this court directly by filing a notice of appeal within 90 days of the decision. 26 U.S.C. § 7483 (2001). (We recognize that the decision was in part based upon a settlement; it is possible he might also have needed to move for relief from the settlement in the Tax Court first. But the fact that it was a settlement hardly strengthens his present case; it only makes his attempted collateral attack on the Tax Court's judgment weaker.) The present appeal is not from the Tax Court's decision, and it is far too late to try that avenue now.

■■■ Furthermore, Auston's effort to bring in tax years other than 1992 cannot succeed. He has not followed the prescribed procedures for recovering refunds for taxes for years other than 1992, such as filing a claim for a refund with the IRS before instituting a suit in court. 26 U.S.C. § 7422(a) (2001). Any claim for a refund must be filed within three years of filing the return or within two years of paying the tax, whichever is later. 26 U.S.C. § 6511(a). Auston said nothing at trial about his compliance with these procedures, and thus on this record we must

assume that he has not done so. Even if he had, the scope of the government's complaint was limited to tax year 1992, and Auston would have had to take some procedural step to broaden it to include other years.

■■■ Finally, we are not persuaded that the district court's failure to rule on Auston's motion to compel discovery (or the other discovery matters about which Auston is complaining) require reversal. A district court has wide discretion in ruling on discovery matters. See *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir.1999). Our review is only to see if that discretion has been abused. *Miksis v. Howard*, 106 F.3d 754, 758 (7th Cir.1997). Although ideally the district court should have ruled on the motion, even if just to say why it was not proper, this was not a situation in which Auston was legally prejudiced by the court's manner of proceeding. We agree with the government that Auston's request for documents was vague and overbroad, and he has not explained here with any specificity why he needed these extraneous materials or why the court's *de facto* denial of his motion harmed his case. Auston also complains that the government should have disclosed before trial that it was going to call Mr. Der Avidesian, but it had no such obligation under the Northern District of Illinois's special local rules for tax cases, see Local Rule 16.1(b)(9), and in any event, Mr. Der Avidesian's testimony was pertinent only to the matters already concluded by the 1996 decision of the Tax Court.

### III

Auston agreed to pay his tax deficiency for the year 1992, and he has not yet done so. He is barred by *res judicata* from challenging that obligation, and his assertions about other tax years go beyond the

scope of this litigation. The judgment of the district court is hereby AFFIRMED